[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 561 
The Special Term found "that while the defendants were trustees, they, as such trustees, declared and paid, out of the property of said corporation, a dividend which rendered the said company insolvent, and which diminished the amount of the capital stock thereof;" and the only question in the case is, whether there was any evidence to justify this finding.
The contract of sale to Houghton is somewhat ambiguous, but I do not think the legal effect of it was to sell the property of the corporation, and declare and pay a dividend, within the meaning of the statute under which the action was brought. It provides for a sale of all the property of the company (with certain exceptions), by transferring all the stock, with a provision that stock, not exceeding 150 shares, which could not be obtained, should not invalidate the contract, but that a corresponding deduction should be made from the purchase-price. Nearly all the stock was transferred, and the consideration agreed upon, after it was received, was paid over to the respective stockholders who transferred their stock, according to the amount held by each. It is true that the contract was not in form a sale of stock by each stockholder, but such was its necessary legal effect. The stockholders who consented to the arrangement transferred their stock and received the agreed price for it. *Page 563 
Houghton thereby became the principal stockholder, and as such controlled the property; but the company remained in existence, and all the property it ever had still belonged to it and was liable for the payment of its debts. Nor did the formal transfer to the new company, subsequently, deprive the creditors of this company of the right either to pursue the property in the hands of the new company or its avails in the hands of the old company. Corporations cannot, any more than individuals, relieve their property from the payment of debts, except by a sale or transfer in good faith and for a full consideration. Upon the sale of the stock to Houghton the stockholders received, over and above incumbrances, $64,000, besides the value of certain personal property to be appraised; and the consideration for that portion of the property sold to the new company was $90,000, including incumbrances. The company all the time remained perfectly solvent and abundantly able to pay all its debts. It is probable that the intention was from the beginning to wind up the affairs of the old company and merge its assets with those of the new; and the sale of stock and transfers made was the mode resorted to for the purpose. This would have been unobjectionable provided the debts of the old company were all paid; but the company was not, in fact, dissolved, and did not cease to do business until after all these transfers were made. It provided for the payment of its debts; and, I infer, actually paid them all except the claim of the plaintiffs, which was disputed and litigated; and there is no doubt but that debt could have been enforced, either against the property in the hands of the new company or the consideration received from it therefor.
But there is a feature of the transaction which presents a more serious question. The assets were not all included in the sale of stock to Houghton. The debts due to the company and some personal property were reserved. This property was afterward transferred to the secretary to be converted into money to pay the debts and liabilities, and the residue to be distributed among the stockholders *Page 564 
who assented to the agreement with Houghton. The evidence tends to show that this property realized $12,000 or $15,000; a portion of which was divided among the stockholders; and the Special Term would have been justified in so finding. The effect of this was to abstract from the assets of the company the amount thus distributed, and to that extent to diminish the amount of its capital. As we have seen, the property specified in the agreement with Houghton, remained afterward the property of the company, and constituted a part of its capital; and, pro tanto, that reserved and divided must also be regarded as a part of its capital. If the trustees had sold the whole property to outside parties and divided the proceeds it would have rendered them clearly liable under the statute; and I am unable to see why the same result does not follow from a sale of a part and a distribution of the proceeds. It is not an ordinary way of declaring and paying a dividend, but in substance and effect it is the same thing. The object of the statute is to prevent the dissipation of the fund designed for the security of creditors, and all who have occasion to deal with these corporations; and, although the statute is highly penal, and a clear case must be established, yet the substance of the act, and not the mere form, must be the test of liability. The trustees had no right as against creditors to appropriate to themselves any portion of the assets constituting the capital.
The Special Term was justified in finding that they did appropriate a portion (at least) of the avails of the property reserved in the agreement with Houghton, in pursuance of the resolution of the ninth of December, and the dividend was in substance declared by that resolution. I am of opinion that the defendants, by that act, rendered themselves liable to the penalty denounced by the statute. They may have acted in good faith, believing that the claim was not a valid liability; but the prudent and lawful course for them to pursue was to have kept the fund to await the result of the litigation. By dividing it among themselves they became personally liable. *Page 565 
The judgment is erroneous to the extent of the costs of the judgment against the company. The liability cannot be extended beyond the strict terms of the statute. This liability, as expressed, is "for all debts of the company then existing, and for all that shall be thereafter contracted while they shall respectively continue in office."
A judgment against the company was neither necessary to the liability of the defendants nor were they bound by it. (Miller
v. White, 50 N.Y., 137.) It is said that they wrongfully defended the action. It was their right to do so as trustees; and we cannot say that it was not their duty. The final recovery of judgment is not conclusive upon that question, but it is sufficient that the costs are not within the terms of the statute.
Judgment must be modified by striking out costs and interest thereon, on judgment against the company, and, as modified, affirmed, without costs to either party in this court.
All concur.
Judgment accordingly.