JAMES HARTLEY, Appellant, *v.* PIONEER IRON WORKS, Respondent.

1. CORPORATIONS— WHEN SALE OF ITS OWN STOCK IS "DIVIDEND ON." Separate resolutions of the board of directors of a corporation read together and held to establish a sale by the corporation of shares of its own stock which was purchased by it from the estate of a decedent and held in its treasury, and to constitute the declaration of a dividend upon the capital stock including such shares, which dividend attached thereto and upon their subsequent transfer passed to the vendees.

2. ISSUED STOCK. Stock issued by a corporation, repurchased and resold by it cannot be regarded as unissued stock.

3. RECOGNITION OF VENDEES' RIGHTS. The crediting of such dividend upon the books of the corporation to the vendees, which stood unchallenged for over a year and a half, and the subsequent declaration and payment of a dividend upon all of the shares, held to constitute a distinct recognition of the rights of such vendees, and to entitle them to their proportion of any subsequent distribution by the corporation, whether in the form of a declared dividend or of a division of profits, which could not be defeated by unauthorized changes in the books in an attempt to make the distribution relate back to a time prior to the delivery to them of their shares, which were claimed to have been transferred "ex-dividend."

*Hartley* v. *Pioneer Iron Works*, 87 App. Div. 107, reversed.

(Argued January 13, 1905; decided February 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 23, 1903, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in opinion.

*William N. Dykman* for appellant. There is no evidence to support the decision of the question of fact. (*State* v. *Smith*, 48 Vt. 266; *Williams* v. *S. Mfg. Co.*, 3 Md. Ch. 481; *City Bank* v. *Bruce*, 17 N. Y. 507; *C., etc., Bank* v. *Fox*, 3 Blatchf. 431; *A. R. F. Co.* v. *Haven*, 101 Mass., 398; *Ralston* v. *Bank of California*, 112 Cal. 208; *Bank of San Louis* v. *Wickersham*, 99 Cal. 655; *Jefferson* v. *Burford*, 17 S. W. Rep. 855; *Otter* v. *Brevoort P. Co.*, 50 Barb. 247; *People* v. *A. & S. R. Co.*, 55 Barb. 344.) The book entries of the dividend at eighty-seven dollars and thirty-eight cents on all the shares are conclusive of the issue. (*F. Nat. Bank* v. *Tisdale*, 84 N. Y. 655.) The purchasers take the dividend at eighty-seven dollars and thirty-eight cents, paid December 1, 1896, and the increase of it paid in July, 1898. (Morawetz on Priv. Corp. [2d ed.] § 177; 2 Cook on Corp. [4th ed.] § 539; *Currie* v. *White*, 45 N. Y. 822; *S. G., etc., Co.* v.

*Dennis*, 34 Pac. Rep. 441.)    The division of profits in 1898 was a dividend.    (2 Cook on Corp. [4th ed.] § 534; *Rorke* v. *Thomas*, 56 N. Y. 559; *R. T. Co.* v. *Reading*, 137 Penn. St. 282; *McKusick* v. *S., etc., Co.*, 48 Minn. 172.)    The defendant could not in July, 1898, declare a dividend payable to the stockholders of record in October, 1896, prior to the sale of the seventy shares.    No such discrimination can be made. (*Jones* v. *T. H., etc., R. R. Co.*, 57 N. Y. 196; 2 Cook on Corp. [4th ed.] § 540; *Ellsworth* v. *N. Y., L. E. & W. R. R. Co.*, 19 Wkly. Dig. 211; 98 N. Y. 648.)

*Edward T. Horwill* and *Albert G. McDonald* for respondent.    A dividend belongs to the stockholder upon such shares of stock only as he owns at the time of its declaration.    To give him a dividend upon shares not owned, but expected to be purchased to enable him to pay the purchase price of those very shares, would certainly require the most explicit and unambiguous agreement on the part of every stockholder affected by the transaction.    Here no such agreement was proven.    (*C. B. Co.* v. *Howlett*, 169 N. Y. 296.)    The plaintiff, Hartley, who was a director of the defendant corporation at the time, is not by law permitted to be beneficially interested in transactions which are against the common interests of the corporation.    Any such transactions, if not void, are voidable at the election of those injuriously affected.    (*Redhead* v. *Parkway Driving Club*, 148 N. Y. 474; *Skinner* v. *Smith*, 134 N. Y. 242; *Welch* v. *I. & T. N. Bank*, 122 N. Y. 189.)

BARTLETT, J.    This is an action to recover a dividend of $132.00 per share paid by the defendant company in December, 1898, on all its shares of stock except seventy.    The plaintiff owned twenty of these seventy shares when the dividend was paid and claims that he was unlawfully prevented from participating therein.

The shares of the defendant company numbered four hundred and eighty, and just prior to October 22nd, 1896, were

owned and held as follows: Alexander Bass, 122 shares; William L. Bass, 101 shares; Mrs. William L. Bass, 51 shares; Samuel H. Milliken, 92 shares; James Hartley (the plaintiff), 39 shares; Alfred Mecke, 5 shares; the defendant company, 70 shares. It is admitted that these seventy shares had been purchased by the defendant company from the estate of Henry Franke, deceased, and by the consent of all the shareholders were held for sale.

On the 22nd of October, 1896, at a meeting of the board of trustees, all present, a resolution was passed "That the company sell to Messrs. Milliken, Hartley and Mecke the seventy shares purchased from the estate of Henry Franke, for the sum of $257.17 per share, with the understanding that the company declare a dividend to allow them to pay for the same, Messrs. Milliken and Hartley voting in the affirmative and Mr. William L. Bass voting in the negative."

A motion was also made at the same meeting as follows: "That we declare a dividend of $87.38 per share, so as to allow Messrs. Milliken, Hartley and Mecke to pay for the seventy shares; Messrs. Alex. Bass, Wm. L. Bass and Mrs. W. L. Bass to apply their dividends towards liquidating the debt of Mr. Wm. L. Bass' Consuelo mortgage; Messrs. Milliken and Hartley voting in the affirmative and Mr. Wm. L. Bass voting in the negative."

At a meeting of the trustees held on November 25th, 1896, all present, a motion was made by Mr. Wm. L. Bass "that with the various letters at hand from Mr. Alex. Bass affording his approval, and that with Mr. Wm. L. Bass' letter of November 25th, 1896, affording his approval, a dividend be declared so that the seventy shares at present unissued can be taken up by Messrs. Milliken, Hartley and Mecke, and that the annual report will show the stock outstanding in full, that portion of dividend accruing from Messrs. Milliken, Hartley and Mecke's interests to go towards paying for the seventy shares, that portion of dividend accruing from Mrs. Bass and Mr. Wm. L. Bass' interests be credited to the Consuelo indebtedness, while that portion of the dividend accruing from

Mr. Alex Bass' interest be held in suspense awaiting more definite instructions prior to crediting Consuelo account also with it."

Mr. Samuel L. Milliken made the following amendment by letter of November 8th, 1896 : " Mr. Alex Bass authorizes crediting his dividend to Consuelo; Mr. Wm. L. Bass approved the amendment."

The learned trial judge in a short form of decision, stated : " Whatever may be spelled out of or argued from the resolution of October 22nd, 1896, with the objection of the director, Wm. L. Bass, need not be inquired into, for it was abandoned apparently because of his opposition, and the new resolution of November 25th, 1896, superseded it; and it cannot be found without something showing it, affirmatively, that the intention was to declare a dividend on the seventy shares of unissued stock, and so to do would be an unusual or extraordinary thing and unfair to the stockholders other than those purchasing the seventy shares, and this resolution shows no intention of doing it."

We are unable to agree with this construction of the resolutions, as in our opinion they must all be read together in order to ascertain the complete action of the trustees concerning the disposition to be made of the seventy shares of stock.

We are also unable to agree with the conclusion that these seventy shares were unissued stock.    They had been issued to Henry Franke, who died while owning them, and were purchased by the defendant company of his estate and were held by it for sale with the consent of all the directors and stockholders.

Reading the resolutions of October 22nd, 1896, and November 25th, 1896, together a consistent scheme looking to the disposition of the seventy shares of stock is disclosed.    In the first place these shares were to be sold at $257.17 per share. In order to carry out the suggestion that the company declare a dividend to enable the purchasers of the seventy shares to pay for the same a dividend was fixed at $87.38 per share on

the entire stock of the company which accomplished the desired result.

It is apparent that the resolution of November 25th, 1896, was supplementary in character and dealt principally with the question of what disposition should be made of that portion of the dividend received by the Bass family. It seems that Wm. L. Bass was indebted to the company on the so-called Consuelo matter in an amount exceeding the portion of the dividend payable to the Bass family, and it was determined at this time that their dividend payment, by consent, should be applied on the indebtedness in question.

It must be admitted that this transaction, like many others in corporate proceedings, lacked distinctness in some details. The books of the company were, however, produced on the trial and read in evidence. It appears from the accounts of the various stockholders therein contained that the scheme disclosed by the resolutions was duly carried out and each stockholder was credited with his portion of the dividend at $87.38 per share, including the seventy shares. The books remained in this condition, presumably open to the inspection of the directors and stockholders, until July 12th, 1898, one year and eight months, when a dividend of twenty-five dollars a share was declared and paid on the whole four hundred and eighty shares.

On the last-mentioned date a motion was made and carried at a meeting of the trustees, that the offer of Mr. Wm. L. Bass to settle the disputed claim of Consuelo matter for the sum of $11,719.00 be accepted. It appears in evidence that this claim amounted to about $23,000. The bookkeeper testified in this connection : " In the first place, instead of declaring an increased dividend, it seems they credited the Consuelo account with that $12,000.00, but Mr. Bass says : 'I will not accept that; I want the books to show the reason,' and then we made the dividend. * * * The precise amount of that Consuelo account, at the time these entries were made in this ledger, was $23,808.56, July 1, 1898,— $12,089.45 was charged to profit and loss."

There is no resolution or direction by the board of trustees authorizing any change in the books of the company. It appears that the bookkeeper was directed by some one, the name he could not recall, to make the changes in question subsequent to the trustees' meeting of July, 1898. The changes were entered as of December 1st, 1896, and showed a revision of the dividend of $87.38, so as to increase it to $132.36 per share. Mr. Mecke testified: " I made entries in the books crediting all shareholders with this $132.00 and some cents a share except upon the seventy shares of stock. That is 410 shares. These 410 shares I credited with $132.00 and some cents a share."

It also appears that he charged against each shareholder the dividend of $87.38 per share credited to him on December 1st, 1896, the result being to deny to the purchasers of the seventy shares the dividend of $132.36 per share. If the defendant company had paid this dividend of $132.36 on all its shares the plaintiff would have received the sum of $2,647.34, for which he sues.

The chronology of this case may be thus briefly stated: In November, 1896, a dividend of $87.38 per share was declared on the entire stock of the company, including the seventy shares in dispute. On December 1st, 1896, certificates for the shares were issued to the purchasers and on the same date the dividend of $87.38 was credited to all the shareholders on the full 480 shares. These transactions appear upon the books of the company, and, as already stated, existed openly and undisputed until July, 1898, a period of twenty months, when a dividend of twenty-five dollars a share was declared and paid on the whole 480 shares. This latter transaction is a distinct recognition of the rights of the stockholders owning the seventy shares in dispute, this dividend being paid on the seventy shares.

The disposition of the amount received in settlement of the Consuelo claim is nothing more or less than a division of profits. A division of profits without the formality of declaring a dividend is the equivalent of declaring a dividend. (Cook

on Corporations [4th ed.], vol. 2, § 534; *Rorke* v. *Thomas,* 56 N. Y. 559; *Reading Trust Co.* v. *Reading Iron Works,* 137 Pa. St. 282; *McKusick* v. *Seymour, Sabin & Co.,* 48 Minn. 172.)

The sale of the seventy shares of stock to the plaintiff and his associates was completed and the dividend of $87.38 paid thereon December 1st, 1896. The subsequent action of the trustees in 1898 was without warrant of law so far as the seventy shares were concerned and absolutely void.

The complaint was improperly dismissed.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur; GRAY, J., absent.

Judgment reversed, etc.