EMBRY et al. v. BENNETT et al.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1908.)

No. 1,774.

1. BANKRUPTCY—FUND HELD BY BANKRUPT AS GUARDIAN—SET-OFF.

The money expended by a father, who is solvent, for the support and education of his sons, or given to them, either before or after their majority, with no agreement or apparent expectation that it will be repaid, is not chargeable against a fund held by him as their guardian in favor of his creditors in bankruptcy, and the sons are entitled to interest on such fund from the time of its receipt by him.

2. SAME—CONTESTED CLAIMS—NECESSITY OF FORMAL OBJECTIONS.

Where the amount of claims filed against the estate of a bankrupt as secured claims was in dispute from the first, and so understood by all parties, it was not necessary that written objections should be filed to entitle the trustee or other creditors to contest their allowance for the full amount claimed.

Appeal from the District Court of the United States for the Eastern District of Kentucky.

Emmet Puryear, for appellants.

J. A. Sullivan, for appellees.

Before LURTON and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

RICHARDS, Circuit Judge. This is an appeal from the orders of the District Court on a petition to review the findings of the referee. On April 27, 1905, an involuntary petition in bankruptcy was filed against Thomas P. Embry, of Boyle county, Ky., and on August 10, 1905, he was adjudged a bankrupt. Embry was a farmer, and a cattle and mule broker. He was a widower, with two sons. The unsecured claims allowed by the referee against him amounted to $17,791.31. The contention here is with respect to certain unsecured claims presented by his sons, and with respect to the extent of their secured claims as the wards of their father, the bankrupt. They claim that the bankrupt received from the executor of their grandfather, William L. Reed, on April 20, 1897, the sum of $11,011.90, bequeathed them by him, and afterwards, on July 18, 1898, the further sum of $165.80, being the balance due them from said estate, and afterwards, on August 11, 1901, the further sum of $770.20, due them as heirs of their mother, Mary R. Embry, the daughter of William L. Reed.

The elder of these two sons, W. Reed Embry, was born October 8, 1877, and became of age in 1898. The younger, Jesse W. Embry, was born July 21, 1882, and became of age in 1903. It seems that the two sons were supported and educated by their father, receiving their collegiate education, for the most part, at Center College, Danville, Ky. Their expenses, including tuition, board in private families, and incidentals, were paid by the bankrupt. It is estimated that between $300 and $400 annually, for each of the young men, was thus expended. It is also estimated that the interest on the money held by the bankrupt, as guardian, would, for each of the sons, approximate this amount.

Accordingly the court below, after careful consideration, reached the conclusion that the sums paid by the bankrupt for the support and education of the sons would just about offset what he owed them for the interest due on the sums held by him for them as guardian. Thus the court below conceded that the wards were entitled to interest on the sums held for them by the bankrupt from the time the latter received them; but it offset against this the amounts the father had paid for their support and education. We think in the latter respect it erred. These two boys were the only children. Their grandfather had left them altogether about $12,000. Their father, at the time they approached maturity, owned two good farms in Kentucky, and outside of that had a business in cattle and mules which was fairly profitable. His credit at the banks seemed to be good, so that he was able to borrow about $15,000 or $20,000 for current use. His failure was apparently brought about by an unfortunate partnership, and by indorsements made for a brother. We think, under the circumstances, that he had a right to support and maintain these children without charging such expenses against the estate they had received from their grandfather. Davis v. Richards, 58 S. W. 477, 22 Ky. Law Rep. 590; Hedges v. Hedges, 73 S. W. 1112, 24 Ky. Law Rep. 2220; Harper v. Payne, 73 S. W. 1123, 24 Ky. Law Rep. 2301. He was not regarded, nor did he regard himself, as a bankrupt or in failing circumstances. He kept no account of his sons' expenditures, and manifested no purpose to charge them as credits on his account as guardian. It was not necessary, nor, as we think, even proper, under the circumstances, for him to charge up against his sons every dollar he gave them, and thus reduce the small estate they had received from their mother's father. He had a right to pay their way until they became old enough to pay it themselves, keeping the money their grandfather left them as a nest egg to be used when needed. Accordingly we hold that the estate of the wards should not be charged with the sums which the bankrupt paid out for his sons' support and education, or as gifts, either before they became of age or after; and we also hold that these wards should be credited with interest upon the sums the bankrupt was charged with, as guardian, from the date he received such amounts.

We agree with the court below that it was not necessary to file a written objection to the alleged secured claims of the bankrupt's sons. It is clear that the precise amount of these claims was in dispute from the first, there being a question as to credits, and a question as to interest, and this was known to every one concerned. Respecting the matter of credits, we agree with the court below that the bankrupt is entitled to a credit of $4,000 on account of the Danville house and lot. We think the house and lot was worth $4,000 at the time it was accepted by W. Reed Embry as a credit. It is true the bankrupt had only paid $3,100 for it, $1,910 in a cottage and $1,225 in money. The cash ($1,225) was undoubtedly the money of the bankrupt. He borrowed it. But there is some doubt as to where the money came from to pay for the cottage. It is sufficiently certain, however, that the bankrupt bought and held this property as his own. Whether he should turn it over to his son Reed as a credit, and what he should receive for

it on account, if he did, was a question between him and Reed. He thought it was worth $4,000, and he put that consideration in the deed; and, while Reed "kicked" at the amount, we think he took the property at that price, and hold that he should be charged with it at that amount.

After the original claim of the Embry boys was filed, on March 8, 1906, W. Reed Embry filed an additional claim for the sum of $1,005, and Jesse W. Embry for $1,115. These were for the proceeds of certain live stock given by relatives, but raised and sold, and the proceeds used by the bankrupt. The referee allowed a portion of these unsecured claims, to Reed $880, and to Jesse $675, but the court below, on the petition for review, rejected them utterly. We think in this the court did right. The claims were evidently an afterthought, and under the view of the law we take were not supported by proper testimony.

To resume: The wards should be allowed interest from the time when the bankrupt received the property bequeathed them by their grandfather; they should not be charged with the sums expended by their father to support and educate them, or given them by way of gifts, either before or since maturity; and the Danville house and lot should be charged against W. Reed Embry at $4,000.

Judgment reversed, and case remanded, with instructions to recast the accounts in accordance with this opinion.