## SPENCER v. LOWE.

## In re TYLER–LOWE MERCANTILE CO.

**(Circuit Court of Appeals, Eighth Circuit. August 26, 1912.)**

### No. 3,609.

1. BANKRUPTCY (§ 340*)—CORPORATIONS—NOTES TO OFFICERS.

Where the president of a mercantile corporation advanced money to it and received the corporation's notes signed by himself as president and by the secretary under the corporate seal, such notes were prima facie a liability of the corporation in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

2. BANKRUPTCY (§ 339*)—CLAIMS—OBJECTIONS—SUFFICIENCY.

Objections to claims of creditors in bankruptcy should be in writing, and sufficiently explicit to indicate to the claimant the nature and character thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526; Dec. Dig. § 339.*]

3. BANKRUPTCY (§ 312*)—CLAIMS—RIGHTS OF CLAIMANT—ESTOPPEL.

Where the president of a bankrupt corporation had loaned money to it on notes, he was not estopped to claim the allowance thereof against the corporation's assets in bankruptcy because of statements of assets and liabilities made at various times which did not include the notes, in the absence of any evidence that he had knowledge of their contents. or that credit was extended to the corporation, and the position of creditors changed on the faith thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. § 312.*]

4. CORPORATIONS (§ 152*)—DIVIDENDS—DIVISION OF PROFITS BY STOCKHOLDERS.

Stockholders of a solvent corporation, including the directors, may meet and agree to a division of profits without the formality of declaring a dividend, such a division being equivalent to a dividend, and the same having been credited to individual stockholders on the books of the corporation, and, subsequently having been withdrawn in whole or in part, those who had not withdrawn the same were entitled to recover their share from the corporation as dividends, though its articles provided that the directors should have power to declare dividends to be paid out of profits when in their judgment it was proper to do so.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 564–567; Dec. Dig. § 152.*]

5. CORPORATIONS (§ 152*)—DIVIDENDS—PROFITS—ACCOUNTS RECEIVABLE.

Though a corporation created for the purpose of merchandising may not declare dividends except out of net profits, book accounts against parties to whom merchandise had been sold in the ordinary course of business, and concerning which there is no question, may be included in the assets of the company in determining whether or not there has been a net profit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 564–567; Dec. Dig. § 152.*]

6. BANKRUPTCY (§ 468*)—FAILURE TO APPEAL—EFFECT.

Where a creditor of a bankrupt was allowed only a small portion of the claim filed, but did not appeal, he could not be awarded more on an ineffective appeal by objecting creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 930; Dec. Dig. § 468.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
198 F.—61

Appeal from the District Court of the United States for the District of Colorado.

In the matter of bankruptcy proceedings of the Tyler-Lowe Mercantile Company. From ·a judgment of the District Court reversing a referee's order disallowing in part the claim of John W. Lowe, and allowing the claim in the sum of $4,864.12, certain creditors prosecuted an appeal in the name of Fermor J. Spencer, trustee. Affirmed.

Hugh McLean (E. T. Murphy, on the brief), for appellant.

Andrew W. Gillette (Henry H. Clark and Newton W. Crose, of counsel), for appellee. ·

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. John W. Lowe was originally a farmer in Missouri. Before leaving that state and early in 1901 he bought a half interest in a stock of goods of M. F. Tyler at Ft. Collins, Colo. May 1, 1901, the Tyler-Lowe Mercantile Company was incorporated with a capital stock of $30,000 to take over the business. Shares of stock for $100 each were issued fully paid and nonassessable. Stock to the amount of $15,000 was issued to Mr. Tyler, $14,000 to John W. Lowe, $500 to Fount L. Lowe, and $500 to James E. Lowe. Mr. Tyler was the first president. The stockholders remained unchanged until February 1, 1904, when Mr. Tyler sold $10,000 of his stock to Frank Loveland, with an agreement that his remaining $5,000 should be taken up within a year, which was done by the Lowes. After the sale by Tyler, John W. Lowe became president of the company. January 28, 1907, Mr. Loveland sold out to the Lowes, and from that time the stock was owned one-half by John W. Lowe and one-fourth each by Fount L. Lowe and J. E. Lowe. Fount L. Lowe was about 20 years of age in 1901, and was secretary and bookkeeper of the corporation until its failure. The business was very prosperous until some time in 1907, when it began to run behind and lost heavily until July 27, 1910, when the corporation · was adjudged an involuntary bankrupt, and Fermor J. Spencer was appointed and qualified as trustee. All the parties interested in the store were active in its management, John W. Lowe having moved to Ft. Collins shortly after his purchase, but he never took any part in the details of bookkeeping. It is undisputed and indisputable that he loaned the· corporation on its notes October 30, 1908, $1,500, November 17th $3,000, and February 3, 1909, $1,500. It is not claimed these notes have ever been paid, but a set-off is claimed. Mr. Lowe made other loans not represented by notes which in the view taken of this case it is unnecessary to enumerate. He filed a claim for the amount of the notes and for his account. To his claim the Wheeler and Motter Mercantile Company filed the following objections:

"Comes now Wheeler & Motter Mercantile Company, a corporation organized and existing under and by virtue of the laws of the state of Missouri, a creditor and party in interest in the estate of the Tyler-Lowe Mercantile Company, and objects to the allowance of the claim of John W. Lowe filed herein for the sum of eleven thousand nine hundred thirty-nine ($11,939.73)

and $^{73}/_{100}$ dollars on the following grounds; that said claim is not listed for said amount in the schedules of liabilities filed herein as sworn to by an officer of the bankrupt corporation; that at divers times said bankrupt corporation have issued financial statements purporting to give the amount of its liabilities, and in such statements no amount is stated as owing John W. Lowe; that the books of the bankrupt corporation do not show that the Tyler-Lowe Mercantile Company to be indebted to the said John W. Lowe in the sum aforesaid; that the said John W. Lowe has received moneys at different times from said bankrupt corporation sufficient to offset any claim that he may have against the estate of said bankrupt, the Tyler-Lowe Mercantile Company. Wherefore your objector prays that a hearing be had, and that the claim of John W. Lowe against the estate of the Tyler-Lowe Mercantile Company be disallowed."

The claim was allowed by the referee in the sum of $6,760.50, being the amount of the notes, but was rejected as to the account. Later upon application of the Wheeler & Motter Mercantile Company and other creditors a rehearing was granted, and the claim was wholly rejected. On review the District Court reversed the referee, and ordered him to allow the claim in the sum of $4,864.12. The trustee having determined not to appeal, the majority of the creditors were permitted to do so, but no appeal has been taken on behalf of John W. Lowe. The amount allowed is less than the amount of the notes, and for this reason many of the questions which would otherwise be material need not be considered.

[1] These notes are signed by the corporation by its president and secretary, and are under the corporate seal. They were given for moneys indisputably advanced at the time, and are prima facie a liability of the bankrupt. The books of the corporation were never well kept, but it appears that during the years when the business was conducted at a profit the supposed profits were annually credited to the individual stockholders, but ordinarily no dividends were voted by the stockholders or directors. February 3, 1902, a formal dividend of 10 per cent. was voted by the directors. On February 1, 1904, at the meeting of the board of directors, Mr. Tyler moved that a dividend be declared of $24,745.68, seconded by Mr. Lowe. There is no record of any vote upon this resolution, but the same day there was credited to each of the stockholders substantially his share of the amount named in the resolution less the amount theretofore credited him. February 1, 1906, the stockholders adopted a resolution that the profits for the year be divided and credited to the different stockholders. On February 1, 1907, profits were credited to each of the stockholders, but there is no record of either board of directors or stockholders voting a dividend. On February 1, 1908, 1909, and 1910, losses were charged to all the stockholders. The amount charged on February 1, 1908, to John W. Lowe was $2,425.17; on February 1, 1909, $7,019.99; on February 1, 1910, $2,760.46. It appears, however, that no meeting of February 1, 1910, was ever in fact held and the minutes of it were written up by the secretary in anticipation of one being held.

[2] In the argument for appellant it is first insisted that John W. Lowe is estopped to prosecute his claim. An examination of the objections of the Wheeler & Motter Mercantile Company reveals that

no suggestion of estoppel was made therein. The rules of pleading are not so strict in reference to claims in bankruptcy as in other cases. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584. And it has been held that objections to a claim need not be in writing. Embry v. Bennett, 162 Fed. 139, 89 C. C. A. 163; Orr v. Park, 183 Fed. 683, 106 C. C. A. 33. In Re Royce Dry Goods Co. (D. C.) 133 Fed. 100, Judge Phillips said:

"There is nothing in the act or the rules in bankruptcy directing the form of such objections. They should be in writing, and the specifications doubtless should be sufficiently explicit to indicate to the claimant the nature and character thereof."

The additional question remains whether when a party puts his objections in writing he can afterwards in an appellate court rely upon wholly different objections not shown to have been urged in the court below.

[3] It will not be necessary to pass upon these questions here. The estoppel rests upon an alleged concealment of the real financial condition of the corporation by the following means: First. By written credit statements issued to the objecting creditors on February 1st and February 4, 1910, which purported to give the company's liabilities, but did not include John W. Lowe's alleged claim. Neither of these statements was signed by John W. Lowe. It is not shown that he had any knowledge of their contents, and they did not without such evidence operate as an estoppel upon him. This is altogether aside from the question of any showing of change of conditions upon the faith of them. Second. By the report to the Secretary of State filed March 2, 1910, in which the total indebtedness was stated at an amount which admittedly did not include the claim of John W. Lowe. Suffice it to say that it does not appear that any credit was extended to the corporation after this statement became known to the creditors or that they changed their position in reliance upon it. It does not appear that any of the creditors acted upon this statement to their injury after they heard of its existence. Third. By a list of creditors of the Tyler-Lowe Mercantile Company exhibited to representatives of the creditors in March, 1910, in which list the claim of John W. Lowe was not included. This statement was not made by John W. Lowe, and he denies all knowledge of it. Fourth. By the bill of sale signed by John W. Lowe in May, 1910, in which it was alleged that a complete list of the creditors was given, but which it is admitted did not show any claim upon the part of John W. Lowe. There is no showing that any credit was extended by any of the creditors with knowledge of this statement. Not only did the creditors plead defenses, and not plead estoppel, but no estoppel is shown. It is contended, however, that Lowe was not entitled to have any part of his claim allowed because of certain offsets as shown by the books, and in this connection it is insisted that none of the dividends or profits credited to John W. Lowe could stand because they were not voted by the board of directors.

More than $11,000 was thus credited to M. F. Tyler and all paid

to him. More than $3,000 was thus credited to Frank Loveland and ultimately he received payment in full. The Lowes received merchandise and cash as against their several credits, but their accounts were never closed. Stockholders' meetings were held annually, and in every instance were attended by all of the stockholders and all of the directors. At these meetings the profits to be apportioned were agreed on by common consent and the credits made by the secretary were authorized and approved by the stockholders and directors, but no notations thereof were made on the minutes. Tyler and Loveland were paid those credits in full. Article 5 of the by-laws of the corporation provided:

"Dividends. The board of directors shall have power to declare dividends upon the capital stock of this company to be paid out of the money in the treasury or property belonging to the company not needed for other purposes, when, in its judgment it would be proper and for the best interests of the company."

[4] It is laid down in a number of standard text-books that, in the absence of other authority, it is the duty of the board of directors, and not that of the stockholders, to determine whether or not a dividend shall be declared. We have carefully examined all of the authorities cited in support of this text, and the only cases which so hold are Grant v. Ross, 100 Ky. 44, 37 S. W. 263, and Hamblock v. Clipper Lawn Mower Company, 148 Ill. App. 618, both of which pass upon the question of whether stockholders can vote a dividend in this country without discussion, and upon the citation of authorities in which the question was not involved. On the other hand in Hartley v. Pioneer Iron Works, 181 N. Y. 73, 73 N. E. 576, it is held that there may be a division of profits among stockholders without the formality of declaring a dividend. Such a division of profits is the equivalent of a dividend, and to the same effect is Central of Georgia Railroad Co. v. Central Trust Co., 135 Ga. 472, 69 S. E. 708, 717, and in Southwestern Railway v. Martin, 57 Ark. 355, 21 S. W. 465, a report was made by the president showing profits and the amount each stockholder would be entitled to and a resolution was offered that profits be distributed according to said report. The minutes failed to show the adoption of the resolution, but the books showed payments to the other stockholders aside from the plaintiff as if the resolution had been adopted, and it was held that an action by the plaintiff would lie for his dividends. In the case of Barnes v. Spencer & Barnes Company, 162 Mich. 509, 127 N. W. 752, 139 Am. St. Rep. 587, the court says:

"Though the record does not show that, as formal action was taken as would be shown by the records of a carefully conducted corporation, we think it cannot be said that dividends were not authorized and declared. It must be remembered that no question of the right of creditors is involved. See Cook on Corporations, 534; Hartley v. Pioneer Iron Works, 181 N. Y. 73, 73 N. E. 576; Rorke v. Thomas, 56 N. Y. 559; Reading Trust Co. v. Reading Iron Works, 137 Pa. 282, 21 Atl. 169, 170; McKusick v. Seymour, etc., 48 Minn. 172, 50 N. W. 1116. Penn. Iron Works v. Mackensie, 190 Mass. 61, 76 N. E. 228: 'A resolution will be construed as equivalent to a dividend where any other construction would amount to an illegal prefer-

ence among the stockholders.' Redhead v. Iowa National Bank, 127 Iowa, 572, 103 N. W. 796: 'A dividend may be legal, even though not formally declared, it being paid by common consent, and hence cannot be recovered back on that ground after being actually paid.' Berryman v. Bankers', etc., Co., 117 App. Div. 730, 102 N. Y. Supp. 695: 'The stockholders may agree among themselves informally to distribute a certian sum as dividends without going through the form of corporate action. No formal declaration is necessary, either by the stockholders or board of directors, and a distribution of profits by a unanimous consent without corporate action is legal.' Groh's Sons v. Groh, 80 App. Div. 85, 80 N. Y. Supp. 438. A division of profits is a dividend, even though not called such and not considered such by the directors or stockholders. Cook on Corporations, p. 1445, and cases cited. A scrip dividend is resorted to where company has profits not in cash. Cook, Par. p. 1446."

In Northwestern Marble & Tile Company v. Carlson, 116 Minn. 438, 133 N. W. 1014, where the board of directors adopted a resolution, "Moved by Darelius, seconded by Hedwall, that a dividend of 6 per cent. be declared on the common stock, payable in common stock or in cash, at the option of the stockholder, at such time as the finances of the firm will in the judgment of the board of directors warrant," it was held that, upon a showing that the finances of the company would warrant it, recovery could be had by a stockholder in the absence of any further resolution upon the part of the board of directors. See, also, Stoddard v. Shetucket, 34 Conn. 542.

We hold that when all the stockholders, including all the directors of a solvent corporation, meet and agree to a division of profits, and they are credited to the several individual stockholders upon the books of the company, and subsequently some of the stockholders withdraw their shares in whole or in part, that is the equivalent of a dividend. The claimant was therefore entitled to the dividends credited to him which did not impair the capital stock.

It is contended that these would be illegal because in making up the statement of the condition of the company they took into consideration a small amount of bills receivable.

[5] Where a corporation is created for the purpose of merchandising, while it has no power to declare dividends except out of net profits, it does not follow that its book accounts against parties to whom merchandise has been sold in the ordinary course of business and concerning which there is no question may not be included in the assets of the company in determining whether there has been a net profit or not. There is no evidence that any of the dividends credited to the stockholders did in fact impair the capital.

We next come to the question of the charging of losses. There was no reference to this at the stockholders' meetings in 1908 and 1909, and the evidence quite clearly shows that the claimant never knew that any losses were charged to him. The alleged meeting of 1910 was never in fact held, and the evidence fairly shows that there was due to the claimant substantially the whole of the amount claimed by him, but even if the charges of losses made in 1908 and 1909 stand there was still due Lowe exclusive of interest on his notes according to their terms in excess of the amount awarded him by the court below.

[6] As the District Court allowed him but $4,864.12, and as he has failed to appeal, and no further relief can be granted him, the decree is affirmed.