## APPEAL OF L. W. GUNBY CO.

Docket No. 4952.   Submitted November 7, 1925.   Decided February 13, 1926.

On the evidence, *held*, that the invested capital of the taxpayer should be reduced by the amounts of promissory notes given to its president.

*K. N. Parkinson, Esq.*, and *H. A. Walburn, C. P. A.*, for the taxpayer.

*Ellis W. Manning, Esq.*, for the Commissioner.

### Before PHILLIPS and TRAMMELL.

#### FINDINGS OF FACT.

1. The taxpayer is a corporation, organized on February 3, 1903, under the laws of Maryland, and is engaged in selling hardware and machinery. Prior to incorporation, the business had been owned and operated as a sole proprietorship by one L. W. Gunby. At the time of incorporation the taxpayer issued 1,500 shares of stock of the par value of $100 each, as follows:

|  | Shares. | Per cent. |
| --- | --- | --- |
| L. W. Gunby | 1,370 | 91.33 |
| Graham Gunby, son | 50 | |
| Donald Graham, brother-in-law | 40 | 8.66 |
| F. L. Smith, employee | 40 | |

2. At that time, the said L. W. Gunby was in ill health and, preparatory to a trip abroad, he desired to adjust his business affairs and to place a greater responsibility on his son and to reward a few employees. At the date of incorporation, the value of the net assets of the individual business owned by L. W. Gunby exceeded the par

value of the stock issued therefor by the amount of $27,531.16, and such excess amount was left in the business. The sum was evidenced by a promissory note in words and figures as follows:

$27,531.16                                    Salisbury, Md.   February 3rd, 1903.

    On Demand, after date—The L. W. Gunby Company of Salisbury Md. promises to pay to the order of L. W. Gunby Twenty-seven Thousand Five Hundred and Thirty-One and 16/100 Dollars at THE FARMERS AND MERCHANTS BANK OF SALISBURY, MARYLAND, value received without offset. The makers and endorsers each hereby waive the benefit of the Homestead and all other statutory exemptions as to the debt evidenced by this note with interest at 5% per annum.

THE L. W. GUNBY CO. OF SALISBURY, MD.
By (Signed) DONALD GRAHAM—Treas.
By (Signed) GRAHAM GUNBY—Vice-President.

3. The business of the taxpayer from the date of incorporation continued to grow and prosper. L. W. Gunby later resumed active control of the business as president and manager, and practically treated the business as his own. Few formal directors' meetings were held; occasionally he would consult his son, Graham Gunby, and the secretary, both of whom were directors, about the amount of the dividends, but they always accepted his judgment. No formal declaration of dividends was made by the directors or entered upon the minutes of directors' meetings, but each year there was credited, as dividends, a certain amount to each stockholder, as determined by the president. The said L. W. Gunby left in the business his dividends and credits. In addition to the dividends, he put in the business other spare money and returns from other investments, all of which were credited to his account and included in the amount of the note. From time to time the taxpayer would issue notes to L. W. Gunby, similar in form to the first note, representing the balance of Gunby's credit, and would cancel the prior notes. The additions of money left in the business by the taxpayer accumulated until, by January 1, 1917, there was a balance of $294,049.28, which balance remained through the taxable year 1919. The notes issued bore interest at 5 per cent, except the last note, on which the provision for interest was marked out. The totals of the notes issued were as follows:

|  |  | Per cent. |
|---|---|---|
| Feb. 3, 1903 | $27,531.16 | 5 |
| Jan. 1, 1908 | 119,545.64 | 5 |
| Jan. 1, 1909 | 175,116.00 | 5 |
| Jan. 1, 1910 | 194,637.62 | 5 |
| Jan. 2, 1911 | 225,318.41 | 5 |
| Jan. 1, 1912 | 250,975.35 | 5 |
| Jan. 1, 1913 | 282,095.55 | 5 |
| Jan. 1, 1914 | 302,836.99 | 5 |

|  |  | Per cent. |
|---|---|---|
| Jan. 1, 1915 _____ | 329, 611. 54 | 5 |
| Jan. 1, 1916 _____ | ⎰274, 741. 22 | |
| | ⎱¹13, 737. 06 | |
| Jan. 1, 1917 _____ | 294, 049. 28 | |

The amount of each note included the principal and interest of the preceding note, the annual dividend, and other credits due L. W. Gunby for the preceding year. The last note so issued was in words and figures as follows:

$294,049.28.                    Salisbury, Md.    January 1, 1917.

Twelve Months after date We promise to pay to the order of L. W. GUNBY, the sum of Two Hundred Ninety Four Thousand Forty-Nine and 28/100 Dollars at THE SALISBURY BUILDING, LOAN & BANKING ASSOCIATION, SALISBURY, MD.    Value received without offset.    The maker and endorser each hereby waives the benefit of the Homestead Exemption and all right to exemption from execution, as to the debt evidenced by this obligation, and if default be made in the payment hereof at maturity, hereby covenants to pay ten per cent additional as collection fee; and hereby authorizes and empowers any attorney of record, to confess judgment against me, us or it, for the above sum and the cost of suit, with ten per cent collection charges. And the maker and endorser each hereby waives demand, protest and notice of nonpayment hereof.

L. W. GUNBY, Pres.            (Signed)        L. W. GUNBY Co.,
                                        GRAHAM GUNBY, Treas.

It is this sum of $294,049.28 which the taxpayer claims as invested capital and which was disallowed by the Commissioner.

4. The by-laws of the taxpayer, in respect to the control and management of the corporation, provided as follows:

### Sec. 1 (Control & Management).

The general control and management of the property, business and concerns of this company, and the power to choose its officers, and agents, and fix their compensation, with the right to fill any vacancy therein, or, in their own number, shall (except as hereinafter delegated to the President), be vested in a Board of Seven Directors, (of whom four shall be a quorum—), to be chosen by its shareholders at their annual meeting, and they shall hold office until their successors are elected, and qualify.

The minutes of the directors' meeting, dated March 20, 1919, are as follows:

RECORD OF Directors Meeting of the L. W. Gunby Company held at office on the 20th day of March 1919 at 10.30 o'clock A. M.

Those present L. W. Gunby, Graham Gunby, Mary S. Lowe. This meeting was held after deputy Collectors Popp and Findley advised us the amount of money left in the business of L. W. Gunby Co. by L. W. Gunby could not be used as invested capital in computing our income tax returns.

At this meeting L. W. Gunby turned over to L. W. Gunby Co. the demand note which the said L. W. Gunby Co. had given him causing this amount

_____
¹ Interest on $274,741.22.

left in the business of $294,049.28 and authorized the Secretary to credit said amount of $294,049.28 on the books of L. W. Gunby Company to Surplus Account said amount of $294,049.28 to be left in the Surplus Account and used by L. W. Gunby Co. as part of its invested capital until January 1st 1920 when the said L. W. Gunby Co. shall issue preferred stock to L. W. Gunby for same.

L. W. Gunby Co. is not to pay to L. W. Gunby any interest on this amount of $294,049.28.

The minutes of the directors' meeting held on February 23, 1920, refer to the indebtedness of the corporation to Gunby and to the intention of satisfying it by the issuance of stock.

The minutes of directors' meeting held in April, 1916, contain a waiver of notice of directors' meeting signed by three directors. At that meeting the resignation of one director was accepted and another was elected. The minutes of that meeting also refer to the indebtedness due Gunby.

The note payable to Gunby, representing the indebtedness due him, was signed by the corporation by its treasurer, and also by Gunby as president.

The taxpayer claims the total amount left in the business by L. W. Gunby was really surplus or undivided profits, for the reason that the dividends were not declared according to law and that there was no authorization for the execution of the said notes. The Commissioner treated this sum as borrowed capital and refused to include it in invested capital.

DECISION.

The determination of the Commissioner is approved.

OPINION.

TRAMMELL: We are fully convinced that the accumulated credit to L. W. Gunby was borrowed capital and can not be included as invested capital. Even a casual examination of the notes in question and the methods of doing business fully disclose that L. W. Gunby considered the taxpayer as using his money as borrowed capital. He not only caused the amounts due him to be credited on the books, but took the precaution of having executed to him interest-bearing negotiable notes. The taxpayer contends that the notes merely represented memoranda, but, if so, they were memoranda of indebtedness. They indicated that the corporation owed Gunby money. Up to January 1, 1917, the credits included 5 per cent interest on the amount of the note of the preceding year, which interest, over a period of 15 years, constituted no mean portion of the balance due.

The taxpayer raised the point that the dividend and the execution of the notes on behalf of the corporation were not authorized by a

formal meeting of the board and were illegal, and therefore the amounts remained a part of surplus. While it is true that there may not have been a strict technical compliance with its by-laws in this respect, corporations may, and close corporations frequently do, distribute earnings and profits without formal action.

The notes were given as obligations of the corporation and there is no evidence that they were not. The indebtedness was acknowledged by the directors at formal meetings. Where the rights of third persons are not impaired, the distribution of profits of a corporation among its stockholders, without any formal action on the part of the corporation, but by consent and agreement of the stockholders, is the equivalent of a dividend. *Ratcliff* v. *Clendenin*, 232 Fed. 61; *Smith* v. *Moore*, 199 Fed. 689; *Spencer* v. *Lowe*, 198 Fed. 961.

It appears that, without any objection on the part of any stockholder or director, the profits of the corporation from the date of its organization had always been distributed without any formal action.