GREENFIELD BROTHERS CLOTHING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6912.   Promulgated November 8, 1927.

*Bernard Greensfelder, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

11

OPINION.

LITTLETON: The complaint of petitioner is evidenced by earnest insistence, ably presented by counsel, that the sum of $92,001.92 should be added to the Greenfield Clothing Co.'s invested capital for the year ended January 31, 1918, and the sum of $96,001.92 should be added to said company's invested capital for the year ended January 31, 1919. The two amounts represent totals of balances of withdrawals from the surplus earnings of the company by stockholders, as of January 31, 1918 and 1919.

The petitioner contends that as there was no formal declaration of dividends for the years involved, such amounts can not properly be considered dividends or distributions of surplus, but should be considered indebtedness of stockholders to the company in the nature of loans by the company and, therefore, constituted invested capital of the company as *bona fide* accounts receivable. It is further insisted that as withdrawals were not always on an exact equal basis and according to the respective holdings of stock, they were not dividends, but were assets of the company and should be treated as invested capital.

The evidence shows, as was stated by one of the brothers, Milton Greenfield, that the brothers in their business relations considered themselves "more or less of a family corporation"; and the business as a family affair. It appears that the business of the corporation was treated throughout as a family affair. The contract entered into by the brothers was with a view, in case of the death of any of them, to keep the stockholdings and the interests of the decedent in the surviving brothers, and this is illustrated by what occurred between them when Gus Greenfield died and his entire holdings and credit balances were taken over by the remaining brothers. There is evidence that no notes were ever given to the Greenfield Clothing Co. for any of the withdrawals. No interest was charged or paid, and no

payments were ever made on the principal so as to indicate that the withdrawals were *bona fide* loans. The moneys withdrawn were not for the purpose of carrying on the business of the corporation, but were for the personal use and benefit of the individual stockholders. The withdrawals produced nothing for the corporation, not even interest.

A number of cases are cited by petitioner in support of its claim that the debit balances of the stockholders should be included in invested capital, but these cases do not in the opinion of the Board justify the conclusion that such withdrawals were *bona fide* loans by the corporation to the stockholders, so as to warrant their inclusion in invested capital of the corporation. Every case must be decided on the application of the law to the particular facts of such case.

The facts in the case of *Eaton* v. *English & Mersick Co.*, 7 Fed. (2d) 54 (C. C. A. 2d Cir.), relied on by petitioner, are not parallel to the instant proceeding. In that case, though there had been a resolution passed looking to a division pro rata among stockholders of the net profits, there was in fact, no withdrawal or distribution of such surplus, but the same was already invested in machinery and equipment of the company. Under such circumstances, the court held such surplus could not be considered "borrowed capital" from the stockholders, as they had never in fact owned or received it and under such circumstances it was held "invested capital." In this proceeding the amounts sought to be included as invested capital did not remain with the Greenfield Clothing Co., but were withdrawn and not invested in the company's business or for its benefit. There appears to have been no formal declaration of a dividend to effect a distribution of the so-called "family corporation," the close relation of the stockholders and their manner of doing business over a period of years making the declaration of a dividend unnecessary to accomplish their purpose of a division or distribution of profits and capital among themselves.

In the case of *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137, also relied on by petitioner, the money credited to the shareholder on the books of the corporation "still remained under the control of the corporation and was tied up in its corporate property and used for its corporate purposes, as fully as before and was, therefore, 'invested capital.'"

Another case, *Appeal of Kate C. Ryan, Executrix*, 2 B. T. A. 1130, is cited in behalf of petitioner. The withdrawals were by only one stockholder out of sixteen. None of the others ever withdrew or borrowed any money from the corporation. This one stockholder considered himself indebted to the corporation and the corporation so considered him and the amount was carried on the books of the corporation. Cash dividends were credited to such stockholder's

account and cash was paid thereon from time to time, and after the death of such stockholder the entire balance of withdrawals was paid by his executrix. Under such circumstances, this Board held such withdrawals were not dividends, but loans by the corporation. At the same time we held:

We recognize that a formal resolution is not essential to a dividend and that there may be an informal dividend where payments or withdrawals are made under circumstances which will constitute them dividends.

In *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982, affd. 17 Fed. (2d) 79, it was held that to be a " dividend " for the purpose of income tax, a distribution by a corporation need not be called a dividend and there need not be any formal declaration. To the same effect, see *Spencer* v. *Lowe*, 198 Fed. 961, and *Smith* v. *Moore*, 199 Fed. 689.

In *Appeal of Walle & Co., Ltd.*, 1 B. T. A. 1064, this Board approved the determination of the Commissioner in refusing to permit the taxpayer to include in its invested capital amounts withdrawn by stockholders and carried on its books as accounts receivable, holding that such withdrawals were payments in anticipation of dividends.

In *Appeal of Feist & Bachrach, Inc.*, 2 B. T. A. 1228, this Board held that withdrawals by the sole stockholders of a corporation, which withdrawals were not even in proportion to their holdings of stock, were never intended to be paid back, but were intended to be, and were, distributions of profits and should be excluded from invested capital of the corporation.

The *Appeal of The Pictorial Review Co.*, 5 B. T. A. 416, is also cited and relied on by petitioner. In this case notes were given for withdrawals and certain payments were made thereon. In that case we said:

There are of course situations where a full consideration of all of the attendant circumstances requires that a withdrawal from the assets of a corporation by a stockholder should serve to reduce invested capital because there is in fact no genuine asset left or intended to be left in the corporation. The *bona fides*, the intention as disclosed from the direct and circumstantial evidence, and the value of the alleged debtors' credit are matters to be considered.

In *Cadillac Automobile Co. of Illinois*, 5 B. T. A. 604, we held that an amount withdrawn from a corporation by its sole stockholder as a loan and carried on the corporation's books and balance sheets as an account receivable upon which credit had been secured, there being ro evidence of a dividend, is within its invested capital, and cited *Pictorial Review Co., supra*, as being in accord therewith, but neither case, when all the facts and circumstances are considered, sustain petitioner's contention here.

In *Comey & Johnson Co.*, 8 B. T. A. 52, this Board held that certain amounts withdrawn by an officer of the corporation represented *bona fide* accounts receivable and a part of invested capital of the corporation. Comey was the president and principal stockholder of the corporation and early after its organization began the practice of withdrawing moneys as he might need from time to time for his personal use. The amount of such withdrawals varied. At regular monthly periods the withdrawal account of Comey would be credited with the amount of his authorized monthly salary which was fixed at $25,000 per annum. Statements submitted by the corporation to the bank from which it obtained credit, showed by notation that the commercial paper of the corporation was endorsed by Comey. Payments to the corporation by Comey were included among the corporation's assets and also in statements submitted to the county taxing authorities. Comey acknowledged his indebtedness to the corporation. No other officer or stockholder of the corporation withdrew any amounts in excess of salaries or dividends credited to their account. Comey promised to repay the amounts he withdrew and acquiesced in crediting to the account salaries and dividends to him until he had paid the balance of the account in 1924. The withdrawals were not to be counterbalanced merely by subsequent dividends. All the facts, taken together, convinced the Board that the amounts withdrawn by Comey were not distributions of profits, but represented *bona fide* indebtedness to the corporation. The amount, therefore, was treated as invested capital of the company.

In the case of *P. Garvan, Inc.*, v. *Robert O. Eaton*, 20 Fed. (2d) 422, the court rendered a very interesting and able opinion on the questions here involved to which some reference may be appropriate.

This was a suit to recover income and profits taxes claimed to have been erroneously assessed and collected from the plaintiff corporation under provisions of the Revenue Acts of 1917 and 1918. The entire stock of the corporation with the exception of four shares was divided equally between two brothers, each of whom drew very substantial salaries and was allowed $10,000 a year for expenses. At the end of each year a 7 per cent dividend was declared. In addition to their salaries, expenses and dividends on their stock, each withdrew various amounts from the corporation during the years in question. If the salaries, expenses and dividends for the year were less than the amounts withdrawn, each would execute a demand note to the corporation, bearing no interest, for the difference. These notes, upon which no payments were ever made, were, by the corpora-

tion in its tax returns, included as invested capital. The facts of that case and the instant-case are so similar and the reasoning of the court so applicable to both alike, we quote briefly as follows:

The plain fact is that reserves of surplus are not built up by the process of extracting the funds from the corporation. To physically pay out corporate funds and to substitute therefor noninterest bearing promissory notes, upon which, for a period of years not a single payment has been made, is indeed a curious method of building up a reserve.

It will serve no useful purpose to discuss the question as to whether the amounts withdrawn by the Garvan brothers ever constituted cash paid in or paid-in surplus. The gist of the problem consists in the determination of the status of those amounts after they were corporeally segregated from the rest of the corporate property. The contention of the plaintiff is that these notes are corporate assets and that because they are corporate assets they constitute "invested" capital within the meaning of the revenue acts. With this suggestion I find myself unable to agree.

The practicalities of the situation at bar indicate the existence of a copartnership in the guise of a corporation, a copartnership composed of two individuals having equal interests. That these gentlemen could in fact withdraw the corporate funds and still continue the status of these funds as invested capital seems to me to be clearly inconsistent.

The notes which were substituted for the funds which were withdrawn I find to be *pro forma* obligations only. The fact that ten years have elapsed in the first instance and six years in the last instance and that not a dollar has been paid to the corporation on account of the notes, when viewed in connection with the personnel and organization of the corporation, is quite conclusively indicative of their real nature. It serves not to say that they have been carried as assets on the corporate books of account and that corporate credit statements have been rendered in which they are so declared. If corporate creditors have been led to believe that these notes are active assets it does not follow that a court must trail along with them.

The spirit of the revenue act is replete with the idea that invested capital is capital employed in the corporate business. It is true that a promissory note may be regarded as invested capital, but it will be found that wherever it has been so regarded, it constituted a current exigent obligation, and represented an actual undertaking to pay for corporate stock, or that it was discountable paper given in regular course in payment of corporate property. The notes in question belong to neither class. I find them to be nothing but a transparent device for distributing surplus funds without appearing to do so.

In the instant case the Board is of the opinion that the withdrawals by the stockholders now claimed as invested capital by petitioner are, in the light of all the facts and circumstances, not *bona fide* loans by the petitioner to the stockholders, but in the nature of dividends or distributions of profits to the stockholders, and should not be considered as invested capital of the petitioner. The action of the Commissioner in refusing to so allow same is therefore approved.

*Judgment will be entered for the respondent.*

Considered by SMITH, TRUSSELL, and LOVE.