730

ATLANTIC COAST LINE RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CAROLINA, CLINCHFIELD & OHIO RAILWAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58958, 65310, 65311, 71649, 71650.   Promulgated November 27, 1934.

*Robert R. Faulkner, Esq., Carl H. Davis, Esq.,* and *Edward C. Bailly, Esq.,* for the petitioners.

*Walter Mandry, Esq.,* and *E. C. Algire, Esq.,* for the respondent.

OPINION.

TRAMMELL: These are consolidated proceedings for the redetermination of deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Atlantic Coast Line Railroad Co. | 58958 | 1928 | $79,252.68 |
| Do. | 65311 | 1929 | 94,150.63 |
| Do. | 71650 | 1930 | 100,089.50 |
| Carolina, Clinchfield & Ohio Railway | 65310 | 1929 | 8,972.46 |
| Do. | 71649 | 1930 | 608.76 |

The parties filed at the hearing a stipulation settling by agreement certain issues raised by the pleadings, and listing 27 issues remaining for decision by the Board. The settlement of issues so agreed upon will be given effect in the redetermination of the deficiencies. The issues remaining for decision present nine general questions, as follows:

I. Is the petitioner, Atlantic Coast Line Railroad Co., hereinafter referred to as the Atlantic Coast Line and sometimes as lessee, entitled to deduct depreciation as claimed on equipment leased for 999 years from the petitioner, Carolina, Clinchfield & Ohio Railway, hereinafter referred to as the Carolina Co. and sometimes as lessor?

II. Is said lessee entitled to a deduction on account of leased property retired during each of the taxable years?

III. (a) Is said lessee entitled to deduct depreciation on that portion of the leased equipment covered by equipment trusts, or (b) is petitioner entitled to deduct the payments made by it on the equipment trusts, and (c) if said petitioner, lessee, is entitled to deduct the payments made on the equipment trusts, then do such payments constitute taxable income to the petitioner, Carolina Co., lessor?

IV. Is the lessor, the Carolina Co., entitled to deductions for depreciation on the leased equipment?

V. Is the petitioner, Atlantic Coast Line, entitled to deduct amounts paid under a guaranty agreement on preferred stock of the Atlanta, Birmingham & Coast Railroad Co.?

VI. Is the petitioner, Atlantic Coast Line, entitled to deductions for depreciation on the cost of reconditioning 30 locomotives, deducted as an expense in 1920 and 1921 and capitalized in 1929 upon instructions of the Interstate Commerce Commission?

VII. Is the petitioner, Atlantic Coast Line, entitled to treat as taxable income only the interest actually paid to it on obligations of the Peninsula & Occidental Steamship Co., or should it accrue all interest due on such obligations?

VIII. Is the petitioner, Atlantic Coast Line, entitled to deduct a contribution of $5,000 made to the Tampa, Florida, Post of the American Legion in 1929?

IX. Is the petitioner, Atlantic Coast Line, entitled to deduct as an expense in 1928 the sum of $49,320.48, representing expenditures which petitioner capitalized in 1930 under instructions from the Interstate Commerce Commission?

All the facts were stipulated by the parties, except that the petitioners offered in evidence certain documents designated A. C. L. Exhibits 1, 2, 3, and 4. The stipulation in full is here adopted as our findings of fact, and so much thereof as is deemed appropriate will be set forth hereinbelow in connection with the discussion of the respective issues.

Issues I and IV. Is the petitioner, Atlantic Coast Line, lessee, entitled to deductions for depreciation on equipment leased for 999 years from the Carolina Co., lessor; and, if not, then is the Carolina Co., lessor, entitled to such deductions?

Under an indenture of lease dated October 16, 1924, effective for accounting purposes January 1, 1925, the Carolina Co. and its subsidiaries leased all their properties to the Atlantic Coast Line and the Louisville & Nashville Railroad Co., hereinafter called the L. & N., jointly, for a period of 999 years. The Atlantic Coast Line owns 51 percent of the stock of the L. & N.

Pursuant to a requirement of the Interstate Commerce Commission, the lessees set up a separate unincorporated organization known

as the Clinchfield Railway Co., hereinafter called the Clinchfield, for the purpose of operating the properties of the Carolina Co. and its subsidiaries. The Clinchfield has been held by the respondent not to be a taxable entity.

In 1914 the Interstate Commerce Commission prescribed a uniform system of accounts to be observed by carriers subject to the Interstate Commerce Act, which was in effect during the taxable years. The accounts of all the railroad companies involved in these proceedings (including the Clinchfield) were kept in accordance with the uniform system of accounts. Since January 1, 1925, the effective date of the lease, no charge has been made on the books of the Carolina Co., lessor, on account of depreciation of the leased equipment, but depreciation has been computed thereon and currently accrued on the books of the Clinchfield.

The petitioner, Atlantic Coast Line, in its returns for the years 1928, 1929, and 1930, claimed as deductions the respective amounts of $226,363.12 (shown in Exhibit 4 attached to the stipulation as $226,364.61), $227,631.83, and $224,954.98, being one half of the total deductions claimed by the two lessees, alleged to represent depreciation charged off on the leased equipment. Respondent admits that if the Carolina Co. had not leased its properties but had continued to operate them itself, it would have been entitled to said deductions.

The Clinchfield filed a separate return for the calendar year 1928 and claimed and was allowed as a deduction for depreciation the amount of $452,729.23, but one half of the net income reported and determined by respondent was included in the return of the Atlantic Coast Line and one half in the return of the L. & N., upon the ground that the Clinchfield was not a taxable entity. The Clinchfield filed no returns for 1929 and 1930, but in computing its net income or loss, one half of which was included in the returns of the Atlantic Coast Line, depreciation was deducted in the amounts of $455,263.66 and $449,909.97. Respondent by affirmative plea alleges that he erred in allowing the deduction for 1928, and in computing the deficiencies for 1929 and 1930 disallowed the deductions claimed on account of depreciation.

The indenture of lease, above referred to, so far as pertinent here contains the following provisions:

Article first provides for the payment of money rental by the lessees to the lessors in stated amounts.

Article second requires the lessees during the term of the lease to pay all taxes and governmental charges imposed, assessed, or levied upon or against the leased property and upon the income, earnings, or profits thereof, as well as all taxes assessed against the lessors upon their respective franchises and upon the income received by them under the lease.

Article fourth provides in respect of upkeep or maintenance as follows:

During the term hereof, the Lessees shall, at their own cost and expense, keep up, maintain, repair and renew the leased property, and all replacements thereof, additions thereto and betterments and extensions thereof, which shall have been paid for by the Lessors with either stock, bonds, or other obligations * * * so that the same and every part thereof shall, at all times, be in good and substantial repair, working order and condition * * *.

ARTICLE SEVENTH : The Lessees shall have the right, and are hereby authorized, from time to time during the term hereof, to make all such additions, betterments, improvements and extensions upon and to the leased property, as the Lessees shall deem to be necessary or proper for the best interests of the leased property * * *. The title to all such additions, betterments, improvements, extensions, stocks and securities which are constructed or acquired with the funds or moneys (of the lessors) or with the stocks, bonds, or other obligations of the Lessors as in this Article provided, shall if practicable, be vested in the Carolina Clinchfield and Ohio Railway, or, if not practicable, in the proper Lessor Company or Companies, and shall thereupon become a part of the leased property hereunder.

The Lessees shall, in the first instance, provide and furnish all moneys, material and labor required for such additions, betterments, improvements and extensions and shall conduct and prosecute all work connected therewith, and shall from time to time render to Carolina, Clinchfield and Ohio Railway full and detailed statements of the cost thereof, and for such costs (unless the same be paid from funds of the lessors) the Lessees shall promptly be reimbursed by Carolina, Clinchfield and Ohio Railway with either bonds or capital stock, or both, of Carolina, Clinchfield and Ohio Railway, as the Lessees shall at the time specify, such bonds or capital stock, or both, to be taken by the Lessees at fair and reasonable market prices in view of market conditions and other circumstances existing at the time.

  *       *       *       *       *       *       *

ARTICLE TWENTIETH : The Lessees shall, at the end of the term herein provided for, or upon the earlier termination of this lease, deliver and surrender to the Lessors, respectively

(1) The leased property in good order and condition, ordinary wear and tear excepted, with such additions, alterations, betterments, improvements and extensions as shall have been made thereto, * * * but upon payment by the Lessors to the Lessees of:

(a) The then existing fair value of all additions, alterations, betterments, improvements (including rolling stock and equipment), and extensions for which stock, bonds, or other obligations of the Lessors shall not have been issued and delivered to the Lessees * * *.

Consideration of the foregoing provisions makes plain, we think, that the lessees did not have, and under the terms of the indenture of the lease cannot at any time have, any capital investment in the leased property. Payment of the amount of money each year as specified in article first of the lease contract, and the payment of taxes as provided in article second, plus the cost of keeping up, maintaining, repairing, and renewing the leased property, as provided in article fourth, and the payment of interest on obligations and other

expenses of the lessors, in the aggregate constitute the rental paid by the lessees to the lessors for the use of the leased property, but none of these items represents in any sense an investment of capital in the property. The lessees are entitled to deduct as business expense all of these items in computing taxable net income, and, as we understand, the deduction of none of them is here in dispute. However, the petitioner, Atlantic Coast Line, lessee, claims the right, in addition, to deduct depreciation, and if this claim is denied, then in the alternative, the petitioner, Carolina Co., lessor, asserts that it is entitled to such deductions.

Deductions for depreciation are allowable on the theory that a taxpayer having capital invested in a depreciable asset, which is being used up or consumed in the process of earning income, is entitled to have a proportionate part of his capital investment, which is being so exhausted, returned to him tax-free each year. The amount allowed represents the loss suffered by the taxpayer on account of the wearing out or exhaustion of the asset. It is obvious, then, that unless (1) the taxpayer has a capital investment in the property, and (2) suffers a present loss on account of the diminution or exhaustion thereof, he is not entitled to a deduction for depreciation.

In the instant case the Atlantic Coast Line, lessee, neither had any capital investment in the leased properties during the taxable years nor suffered any present loss on account of the wear and tear and exhaustion thereof. The depreciation of the leased property does not exhaust any capital investment which this lessee has made. So far as it is concerned, maintenance and depreciation are part of the expenses of operation. It is, therefore, not entitled to deductions for depreciation. *Weiss* v. *Wiener*, 279 U. S. 333; *Belt Railway Co. of Chicago*, 9 B. T. A. 304; affd., 36 Fed. (2d) 541; certiorari denied, 281 U. S. 742; *Tunnel R. R. of St. Louis* v. *Commissioner*, 61 Fed. (2d) 166, affirming 17 B. T. A. 185; certiorari denied, 288 U. S. 604; *Michigan Central Railroad Co.*, 28 B. T. A. 437.

Likewise, the petitioner, Carolina Co., lessor, is not entitled to deductions for depreciation. In none of the taxable years did it suffer any ascertainable loss on that account. Under the indenture of lease the lessees were and are required " at their own cost and expense ", to keep up, maintain, repair, and renew the leased property, and at the expiration or earlier termination of the lease to deliver and surrender the property to the lessors " in good order and condition, ordinary wear and tear excepted." If it can be said with reasonable certainty that upon the expiration or termination of the lease the lessors will suffer a loss to the extent of the excepted " ordinary wear and tear ", the amount of such loss sustained during the taxable years, if any, has neither been alleged nor shown. Otherwise, the

Carolina Co. has suffered no present loss during the taxable years which entitles it to the deductions claimed. *Weiss* v. *Wiener, supra.*

The contention of the petitioners that it is inconsistent to deny deductions for depreciation both to the lessees and the lessors in a case of this kind was considered by us in *Terre Haute, Indianapolis & Eastern Traction Co.*, 24 B. T. A. 197, 212 (affirmed on this point, 67 Fed. (2d) 697), where we said:

> Petitioners further argue that to deny the lessor the right to take the deduction is to deny the deduction to anyone, since it is settled that the lessee is not entitled thereto. But such a situation is more apparent than real. The lessor is denied the deduction because it has not and will not suffer any loss for the reason that the lessee has promised to make good any loss that might occur on account of exhaustion, wear and tear. And the lessee, when it makes good the loss is entitled to deduct the entire amount so expended, either in the year in which made (if an ordinary repair), or (if a capital item), over the life of the property replaced or remaining term of the lease, whichever is shorter. In that manner the lessee will have returned to it its entire cost of maintaining the property, which it is entitled to deduct, and the lessor, at the end of the term, will receive back its property or its equivalent in value in as good condition and value as when leased.

In *Duffy* v. *Central R. Co. of New Jersey*, 268 U. S. 55, the Supreme Court held that expenditures by a railroad, as lessee, for *additions and betterments* to property under lease for 999 years, did not constitute rentals or other payments deductible as current expense, but were capital expenditures subject to annual deductions for depreciation or exhaustion. In that case the question whether *upkeep or maintenance* expenditures constitute rentals deductible as expense was not before the Court. The sole issue was whether expenditures for *additions and betterments* made by the lessee were deductible as expense on the theory that they constituted rentals In its opinion, the Court said:

> Clearly the expenditures were not " expenses paid within the year in the maintenance and operation of its (respondent's) business and properties"; but were for additions and betterments of a permanent character, such as would, if made by an owner, come within the proviso in subdivision Second * * *. They were made not to keep the property going, but to create additions to them. They constituted, not *upkeep*, but *investment;* not maintenance or operating expenses, deductible under subdivision First Par. (a), but capital subject to annual allowances for exhaustion or depreciation, under subdivision Second.

The facts of that case are clearly distinguishable from those of the instant proceedings, for the reason that here the lessee was entitled to immediate reimbursement for all additions and betterments, and was in fact so reimbursed by the lessor; hence, the lessee had no investment in the property to be exhausted, as in the *Duffy* case.

Furthermore, the Court refers to maintenance as an operating expense, which is the question involved here, and not the deduction of

expenditures for additions and betterments. The *Duffy* case, we think, does not control the issue here, but the principles applied in that case, so far as pertinent to the issues in the present proceedings, not only are not inconsistent with but support the conclusion we reach.

In its brief the petitioner, Atlantic Coast Line, urges in support of its claim to deductions for depreciation that reserves for depreciation were not voluntarily established by the lessees, but that such reserves were " created to meet a definite liability under the contract of lease as required by the mandatory provisions of regulations promulgated by the Interstate Commerce Commission."

In cases hereinabove cited, the lessees set up depreciation reserves, but nevertheless were denied the deductions substantially for the reasons that (1) they had no capital invested in the depreciable assets which they were entitled to have returned tax-free by way of deductions from gross income, (2) their expenditures for maintenance were deducted as ordinary business or operating expense, and (3) they suffered no present loss on account of depreciation of the leased property. The same reasons have equal application here.

Nor is the position of the petitioner lessee on this question strengthened by the fact that it was required by the Interstate Commerce Commission to carry into its accounts the depreciation accruing on the leased property and to deduct the same in computing its annual net operating income.

For obvious reasons we are not bound by the rules of the Interstate Commerce Commission, which rules are made for purposes entirely different from the determination of *taxable* net income, and in the situation here the rule referred to is even without persuasive effect. Rejecting the same argument in *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552, the Court said:

Moreover, the rules of accounting enforced upon a carrier by the Interstate Commerce Commission are not binding upon the Commissioner [of Internal Revenue]; nor may he resort to the rules of that body, made for other purposes, for the determination of tax liability under the Revenue Acts.

The petitioner, Atlantic Coast Line, attempts to distinguish the present proceedings from the cases above cited, and contends that the latter have no application here. It is argued (1) that *Weiss* v. *Wiener*, *supra*, was decided on its own peculiar facts, and does not control the instant case, and (2) that the petitioner lessee in fact and in effect has an investment in the leased property which entitles it to the deductions claimed. We rejected the same arguments in *Michigan Central Railroad Co.*, *supra*, at pages 455 and 456, saying:

The lessees had no capital investment in the leased properties involved. As was said in *Tunnel R. R. of St. Louis* v. *Commissioner*, 61 Fed. (2d) 166, 174, " It may be that to all practical purposes, the petitioner is the owner, but no

portion of the capital investment * * * has been paid for by the petitioner (lessee)."

While the facts involved in *Weiss* v. *Wiener*, 279 U. S. 333, may be distinguishable, the principle of that case was applied in *Tunnel R. R. of St. Louis* v. *Commissioner*, *supra*, by the Circuit Court of Appeals for the Eighth Circuit, and by this Board (17 B. T. A. 185), to railroad properties under leases like those involved in these proceedings.

The petitioner, Atlantic Coast Line, lessee, has been allowed deductions for its expenditures on account of upkeep, repairs, and maintenance of leased property, and respondent concedes that "whenever the lessee invests its capital in leased depreciable property in performance of an obligation of the lease it will be entitled to amortize such expenditures over the life of the property replaced, or the remaining life of the lease, whichever is shorter."

We think respondent's position on issues I and IV is correct. His action in disallowing deductions for depreciation to both petitioners, lessee and lessor, for 1929 and 1930 is approved, and his affirmative plea that he erred in allowing the deduction to the lessee for 1928 is sustained.

Issue II. Is the petitioner, Atlantic Coast Line, lessee, entitled to a deduction on account of leased property retired during each of the taxable years?

The lease contract became effective for accounting purposes as of January 1, 1925, and article fourth provides that:

Whenever, during the term hereof, any part of the leased property * * * or any replacement thereof, addition thereto or betterment or extension thereof, which shall have been paid for by the Lessors * * * shall be damaged or destroyed, or shall otherwise become unfit for its appropriate use and purpose, the Lessees at their own cost and expense, shall cause the same to be repaired, renewed, replaced, or rebuilt, * * * or to be replaced by other property of equal value, which shall become and be the property of the Lessor Company * * *, and the Lessees shall not be entitled to be reimbursed by the Lessors * * *

Under these provisions of the lease contract, whenever the lessees retired any of the leased property and elected to replace the same by other property of equal value, the lessees were not entitled to reimbursement by lessors to the extent of the depreciated cost to lessors of the retired property at effective date of the lease contract, or January 1, 1925. But the lessees were entitled to reimbursement for the cost of all additions and betterments.

During each of the years 1928, 1929, and 1930 the lessee made additions and betterments to the leased properties, the cost of which was charged to the lessor on the books of the Clinchfield. During these years lessee retired real property and equipment (not covered by equipment trusts) of lessor and on the books of the Clinchfield credited lessor with the depreciated cost thereof as of date of the

lease contract. The lessees received bonds of the lessor for the difference between the aforesaid charges and credits.

In computing its taxable income the petitioner, Atlantic Coast Line, claimed as deductions one half of the January 1, 1925, depreciated cost of the property so retired, less depreciation to date of retirement and salvage, as follows: For 1928, $19,394.62; for 1929, $4,878.71; and the stipulation on page 9 shows the amount of the deduction so claimed for 1930 to be $6,612.58 based upon a depreciated cost at the effective date of the lease contract credited to the lessor of $79,742.81, whereas on page 8 of the stipulation the credit to the lessor for 1930 is shown as $79,515.29. This appears to be a clerical error in the preparation of the stipulation, and if so, the same may be corrected in the recomputation of the deficiency under Rule 50.

It is our opinion that the petitioner is entitled to deduct one half of the depreciated cost at January 1, 1925, of the retired property, less salvage, such deductions to be reduced by the amounts of depreciation heretofore allowed by respondent, as set out below. By the terms of article fourth of the indenture of lease the lessees are required, at their own cost and expense, to " keep up, maintain, repair and renew the leased property ", and all additions and betterments thereto. Also the lessees are obligated, at their own cost and expense, to repair, renew, replace, or rebuild any part of the leased property, including additions and betterments, that might become damaged or destroyed or otherwise unfit for appropriate use, or if inexpedient to be repaired or replaced in kind, then lessees are authorized to replace such property by other property of equal value, for all of which the lessees are not entitled to be reimbursed by the lessors. For all additions and betterments the lessors are obligated by article seventh to reimburse the lessees with stock or bonds " at fair and reasonable market prices."

Thus, it appears that, pursuant to an obligation imposed by the lease contract, the lessor reimbursed the lessees for all additions and betterments to the leased property made by them during the taxable years, and that pursuant to a like obligation the lessees reimbursed the lessor for all property retired during the year which was not repaired or replaced in kind. This is the net result which flowed from the charging of additions and betterments to the lessor and the crediting of retired property to the lessor and the issuance of bonds by the lessor to the lessees for the difference between such charges and credits.

We think that it is clear, therefore, that the amounts claimed by the petitioner lessee as deductions, as set out in the stipulation, represent the cost to it in part of the process of maintenance of the leased

properties, for which it was not and will not be reimbursed. If not strictly a part of the cost of maintenance, the credits in question certainly represent cost to the lessees of carrying out their contract with the lessor, and were in effect payments made by the lessees to the lessor in lieu of their obligation to replace the retired property in kind or by other property of equal value. To the petitioner lessee these expenditures constituted rental paid for the use of the leased properties, and petitioner is entitled to deduct the same as current operating expense. The action of the respondent on this issue is reversed.

The deductions on account of retired property allowable to the petitioner, Atlantic Coast Line, for the respective taxable years, are as follows:

|  | 1928 | 1929 | 1930 |
|---|---|---|---|
| Depreciated cost January 1, 1925 | $66,794.81 | $47,878.44 | $79,742.81 |
| Less salvage | 23,758.97 | 31,395.83 | 61,919.24 |
|  | 43,035.84 | 16,482.61 | 17,823.57 |
| One half | 21,517.92 | 8,241.30 | 8,911.78 |
| Less depreciation allowed | 707.76 | 840.65 | 459.84 |
| Deduction allowable to Atlantic Coast Line | 20,810.16 | 7,400.65 | 8,451.94 |

Issue III. (a) Is the petitioner, Atlantic Coast Line, lessee, entitled to deduct depreciation on the leased equipment covered by equipment trusts for balance of purchase price, or (b) in the alternative, is said petitioner entitled to deduct the payments made by it on the equipment trusts, and (c) if it is entitled to deduct the payments so made, do such payments constitute taxable income to the petitioner, Carolina Co., lessor?

Up to the effective date of the lease, to wit, January 1, 1925, the railroad properties of the lessor were operated as one system of transportation by the Carolina Co., and there were in existence and outstanding certain equipment trusts executed by the Carolina Co. upon which there remained unpaid on said date $6,329,000, which matured at the rate of $564,000 during each of the taxable years 1928, 1929, and 1930. During each of these years the lessees jointly paid off the principal of these obligations as they matured and received from the lessor its 5 percent bonds known as " Series B, First and Consolidated Mortgage Gold Bonds ", maturing April 1, 1956, in the amount of $331,200 and noninterest bearing notes in the amount of $232,800.

The provisions of the indenture of lease material to issue III are as follows:

ARTICLE EIGHTH: The Lessors, and each of them, covenant and agree that they will, from time to time during the term hereof, and prior to the maturity of any of the * * * equipment notes or obligations * * *, for the payment of which they or any of them are liable, * * * execute, issue and deliver to the Lessees new bonds or other obligations or stock, or both, of the proper Lessor Company in an amount sufficient to reimburse the Lessees at fair and reasonable market prices, in .view of market conditions and other circumstances then existing, for all payments, costs and expenditures of the Lessees, paid or made on behalf of Lessors, in taking up, paying and discharging the maturing * * * equipment notes and obligations * * * of the Lessors aforesaid * * *; and thereupon the Lessees shall, and they hereby covenant and agree that they will, for and on behalf of the Lessors, negotiate the sale of such amount of said new bonds or obligations as shall be necessary to produce the money requisite for, and will apply said money to the payment and discharge of the principal of all of said maturing * * * equipment notes and obligations * * * of the Lessors * * *.

It is further provided in this article, however, that the lessees may arrange to pay and discharge maturing obligations of the lessors by exchanging the new bonds or obligations therefor; or may arrange to extend or renew any maturing obligations; and in case the lessors shall fail to perform their covenants and agreements in this respect, the lessees may pay the obligations mentioned, which shall remain valid and outstanding against the lessors and the lessees shall be subrogated to the rights of the holders as against the obligor or guarantor and as against the property pledged or mortgaged to secure the same.

The petitioner, Atlantic Coast Line, contends that if it is not entitled to deductions for depreciation on all of the leased equipment, then it is entitled to deduct depreciation on equipment covered by the equipment trusts, for the alleged reason that the lessees assumed " the obligations of the lessor in respect thereto, and for all practical purposes became the purchaser of the property in no less degree than had they directly purchased it."

As a second alternative, petitioner contends that if it is not entitled to deduct depreciation on the property covered by the equipment trusts, it is entitled to deduct the amount paid in each year on the equipment trusts. Petitioner argues that the bonds and noninterest bearing notes actually received from the lessor had no present value, and therefore the amount of its expenditures in each taxable year represents an investment in the property.

We can find no support in the record for these contentions. The lessees did not agree to assume the obligations of the lessors on the equipment trusts without right to reimbursement, but under article eighth of the indenture of lease, hereinabove quoted, merely agreed to negotiate the sale of such an amount of the new securities of the lessors as might be necessary to produce the money requisite for the

discharge, among other things, of the principal of maturing equipment notes, and to apply the money to the payment of such notes. Thus, it appears that the lessees were intended to serve as the agents of the lessors in selling securities to provide the necessary cash funds for the payment of the maturing obligations, including the equipment trusts, and as the conduit through which those funds were to be passed to the holders of the lessors' obligations.

The lessees were not and are not bound by the provisions of the mortgages executed by the lessors prior to the date of the lease contract, except as the lessees may have assumed such obligations by the later agreement, which we have been unable to find that they have done. It is the indenture of lease which governs the relationship and mutual obligations of the lessors and lessees, and it is neither alleged nor contended that either party has breached such contract.

Moreover, it is not shown that the lessees were not in fact fully reimbursed by the lessors for all payments made by them on the equipment trusts during the taxable years. The stipulation recites that the lessees paid off the principal of the obligations as they matured and that they " received lessor's five per cent bonds known as Series B, First and Consolidated Mortgage Gold Bonds, maturing April 1, 1956, and non-interest bearing notes as shown in Exhibit 3 * * * in accordance with the terms of the lease and the mortgage covering the aforesaid bonds * * *." Exhibit 3 referred to shows only the amounts of " Bonds Received " and " Notes Received." There is no proof as to the fair market value at the date of receipt of either bonds or notes, and, for all the record shows, they may have been worth par or face value.

The value of the security received, however, we do not regard as controlling. Certainly under the terms of the indenture of lease, hereinabove quoted, the lessees were entitled to require reimbursment, in full, in cash or its equivalent, from the lessors for all amounts paid by them on the equipment trusts, and if the lessees did not, for any reason satisfactory to them, require the lessors to comply with their contract in that respect, as they might have done, the lessees do not thereby become entitled to deductions on that account.

In *Glendinning, McLeish & Co.*, 24 B. T. A. 518, 523, we held that payments made by the petitioner corporation under a guaranty of dividends of a foreign corporation's preferred stock, the guaranty being in part consideration for the foreign corporation's sale of its American business to the petitioner, were in the nature of loans or advancements and not deductible as business expense, where the agreement provided that the petitioner would be reimbursed therefor, citing authorities. In affirming our decision at 61 Fed. (2d) 950, the appellate court in its opinion said:

Being advances made by the petitioner in accordance with its agreement to make them and the agreement of the Belfast company to repay them, the amounts here involved were not within the statute * * * permitting the deduction of ordinary and necessary business expenses, since they could not be expenses of any kind provided the petitioner could and did enforce its right to reimbursement. Although we know that it has not, there is no proof that it could not have required the agreed repayment if it had elected to do so. Perhaps it would be going far to call these advances loans in the ordinary sense, but there is no occasion to define them precisely, for we are now concerned only with their deductibility for the computation of the net income for purposes of taxation and it is enough to determine negatively only that in none of the taxable years was the payment made in that year an expense of the business. The agreement for reimbursement made them at least advances on the credit of the Belfast Company, and requires that they be so treated in computing the net income of the petitioner. As such they were not deductible.

Because the petitioner lessee was entitled to be reimbursed by the lessors for all payments made during the taxable years on the equipment trusts, petitioner had no capital invested in the property and is not entitled to deductions for depreciation. For the same reason it is not entitled to deduct the amount paid in each taxable year as a business expense or otherwise. Respondent is sustained on this issue.

Having reached the conclusion stated, it becomes unnecessary to consider the alternative contention of the respondent that if the lessee is entitled to deduct the payments so made, such payments constitute income to the lessor.

Issue V. Is the petitioner, Atlantic Coast Line, entitled to deduct amounts paid under a guaranty agreement on preferred stock of the Atlanta, Birmingham & Coast Railroad Co.?

The Atlanta, Birmingham & Coast Railroad Co., hereinafter called the A. B. & C., is a railroad corporation owning and operating about 640 miles of railroad, and engaged in the transportation of freight and passengers in intrastate and interstate commerce in the States of Georgia and Alabama. It connects with the railroad of petitioner, Atlantic Coast Line, at various points, and is operated as a part of its system of transportation.

During the taxable years here involved all of the authorized and outstanding common stock of the A. B. & C. was owned by the Atlantic Coast Line, and its income tax returns were included in the consolidated returns filed by the parent company.

These properties were formerly operated by a corporation known as the Atlanta, Birmingham & Atlantic Railway Co., which was placed in receivership in 1915 and operated by the receiver to and including the year 1926. On February 23, 1926, an agreement was entered into between a committee representing the bondholders of said company and the Atlantic Coast Line, which provided, among other things: (1) That a new company should be organized to acquire

the properties of the old company, Atlanta, Birmingham & Atlantic, by foreclosure sales; (2) that the new company should have a capitalization of $5,200,000 par value preferred stock, entitled and limited to 5 percent cumulative dividends, payable semiannually, and 150,000 no par value shares of common stock; (3) that the preferred stock should have no power to vote except in case of continuing default in the payment of two semiannual dividends, in which case the preferred stock should have exclusive voting power so long as any default continued; (4) that the dividends (and redemption in certain circumstances) of the preferred stock should be guaranteed by the Atlantic Coast Line; (5) that the Atlantic Coast Line should provide cash for specified requirements, including the payment of taxes, loans matured and unmatured, materials and supplies, and miscellaneous expenses, in the total amount of approximately $3,600,-000; and (6) that the Atlantic Coast Line should be entitled to receive the entire issue of 150,000 shares of common stock of the new company in exchange for the cash so to be provided by it.

Thereafter the court ordered said properties sold at foreclosure and they were bid in by representatives of the bondholders' committee, subject to the approval of the agreement of February 23, 1926, by the Interstate Commerce Commission. The Commission approved the agreement in reports and orders dated October 26, 1926, and December 21, 1926, reported in 117 I. C. C. at pp. 181 and 439, respectively. Thereafter, the agreement was performed and the stock of said company distributed as therein provided.

During each of the years 1928, 1929, and 1930 the A. B. & C. notified the Atlantic Coast Line that it did not have earnings with which to pay a dividend of 5 percent on its outstanding preferred stock. The Atlantic Coast Line, in compliance with its guaranty agreement entered into in accordance with and under the terms of said agreement of February 23, 1926, paid to the trustee named in the guaranty agreement a sum sufficient to pay the dividend, of which the sum of $257,095 was paid to owners of the preferred stock other than the Atlantic Coast Line in each of the taxable years. In its returns for said years the petitioner, Atlantic Coast Line, claimed as a deduction the said sum of $257,095, which deduction was disallowed by the respondent.

Petitioner's contention is substantially that the amounts paid in each taxable year represent expenditures made to insure retention of its control of the A. B. & C., which was necessary to the protection of its business, and that it is entitled to deduct such amounts as business expense; or, in the alternative, that the amount so paid represents capital loss, and that the payment made at the end of each six-month period preserved to the petitioner for a like period its

existing right to exclusive voting control over the affairs of the A. B. & C. and the management of its property. Respondent's contention is that said payments constitute additional cost of the common stock of the A. B. & C. acquired by the petitioner, and therefore represent capital expenditures which are not deductible in computing net income.

In our opinion respondent's contentions must be sustained. Looking at the whole situation, we think the conclusion is justified that petitioner's agreement to guarantee the payment of the dividends on the preferred stock of the A. B. & C. was a part of the consideration in exchange for which it received the common stock. Obviously, petitioner could not have obtained the common stock of the A. B. & C., with unrestricted control of that railroad and its properties, for the cash consideration of $3,600,000 only. The bondholders of the old company would not have agreed to the reorganization plan, whereby they received preferred stock of the new company in lieu of the bonds issued by the old company and the petitioner received all of the common stock of the new company, unless petitioner had guaranteed payment of the dividends on the preferred stock. The payments made by the petitioner on its guaranty, then, must be regarded as a part of the consideration paid for the common stock, and are capital expenditures. Being such, they are not deductible as expense.

Petitioner's argument that the payments in question were made by it in order to retain control of the A. B. & C., and are in the nature of operating expenses, or, if capital expenditures, their value became exhausted within each six-month period, is not impressive. Voting rights, which import control, ordinarily inhere in the common stock of a corporation and when petitioner acquired the common stock of the A. B. & C. for $3,600,000 and guaranteed payment of the dividends on the preferred stock, the dividend payments represented merely the additional consideration paid to acquire absolutely the rights pertaining to the common stock. Payments made to acquire or retain control of a business are in their nature capital investments.

In *Newark Milk & Cream Co.*, 10 B. T. A. 683; affirmed, 34 Fed. (2d) 854, an agreement was entered into among the stockholders of the corporation by which certain litigation was terminated and one set of stockholders acquired the shares of stock held by another group of stockholders. As a part of the agreement, the corporation guaranteed a return of 8 percent upon the consideration so paid for its stock for a period of 10 years. We held that the payments made by the corporation under its guaranty did not constitute deductible expense, saying:

Looking to the agreement as a whole we must conclude that the guaranty was as much a consideration for the transfer of the stock as was the promise to pay the $200,000. The fact that the liability upon the one was assumed by the individual stockholders, and upon the other by the corporation, does not distinguish them. It should be noted that the stock was closely held. * * *

It was held in *Laemmle* v. *Eisner*, 275 Fed. 504, that amounts paid as attorney's fees in litigation for control of certain stock resulting in practically the ownership or control thereof were capital expenditures and were not deductible as ordinary and necessary expense of carrying on a business.

In *New England Power Co.*, 25 B. T. A. 195, the parent corporation guaranteed dividends on the preferred stock of one of the petitioners and in fulfillment of that guaranty paid certain sums, which we held did not constitute income to the subsidiary, pointing out in our opinion that the respondent has long held that payment by the holding company in fulfillment of a guaranty of dividends of a subsidiary may not be deducted by the holding company in computing net income, but may be added to the cost of its stock in the subsidiary.

For the reasons above indicated, we are of the opinion that the amounts paid by the petitioner during the taxable years in fulfillment of its guaranty of dividends on the preferred stock of the A. B. & C. are not deductible as expense or otherwise. The action of the respondent on this issue is approved.

Issue VI. Is the petitioner, Atlantic Coast Line, entitled to deductions for depreciation on the cost of reconditioning 30 locomotives, deducted as expense in 1920 and 1921 and capitalized in 1929 upon instructions of the Interstate Commerce Commission?

The stipulation of the parties in respect of this issue reads as follows:

During the years 1920 and 1921 Coast Line made expenditures (which were charged on its books to operating expenses) in the amount of $338,920.00 in making repairs of a general nature, including installation of new boilers and fireboxes to thirty locomotives which it had purchased in prior years at a cost of $390,039.30. In its income tax returns for the years 1920 and 1921 Coast Line included the said expenditures in its operating expenses which were claimed as deductions and respondent did not question these deductions in the determination of Coast Line's tax liability for said years. In 1929 Coast Line was required by the Interstate Commerce Commission to capitalize said expenditures. Coast Line claimed and was and is being allowed depreciation on the original cost of said locomotives of $390,039.30 and is now claiming the right to deduct in addition thereto depreciation on the expenditure of $338,920.00 in the amount of $10,167.60 for each of the years 1928, 1929 and 1930. Respondent denies the right of Coast Line to this deduction. For the purpose of these appeals the respondent concedes that if it be judicially determined that Coast Line is entitled to a deduction for depreciation of the expenditures in question the annual amount of $10,167.60 may be considered correct. Because of the running of the statute of limitations respondent is now precluded from making any adjustment of the tax liability of Coast Line for the years 1920 and 1921.

Respondent contends that since petitioner elected to treat the expenditures in controversy as expense, deducting the amounts from gross income for the years 1920 and 1921, and respondent is now precluded by limitations from adjusting the tax liability for those years, petitioner is estopped from asserting that the expenditures were for capital assets and claiming additional deductions for depreciation thereon. Petitioner seeks to avoid the application of the doctrine of estoppel on the ground that it had no right of election because the Interstate Commerce Commission in 1929 required that it capitalize said expenditures.

As hereinbefore pointed out, the action of the Interstate Commerce Commission in prescribing methods of accounting for common carriers subject to its jurisdiction, such requirements obviously being made for other and different purposes, has no controlling effect in the determination of income tax liability. *Old Colony Railroad Co.* v. *Commissioner, supra.* Decision of the present issue must, therefore, be made on the same basis as if petitioner had voluntarily capitalized its former expenditures without requirement by the Interstate Commerce Commission.

At the time these expenditures were incurred petitioner saw fit to treat them as repairs and expenses and so deducted them for income tax purposes. This treatment was accepted by the Commissioner as correct and petitioner's tax liability was determined on this basis. Petitioner now seeks to retrace its steps and to capitalize these same expenditures and in the guise of depreciation to take a second deduction. The evidence (stipulation of facts) does not convince us that the petitioner was so radically wrong in its former treatment of the matter that the change should be permitted. We therefore do not have to reach or decide this question on the doctrine of estoppel. On this point the respondent is sustained. *Lake Charles Naval Stores*, 25 B. T. A. 173.

Issue VII. Is the petitioner, Atlantic Coast Line, entitled to treat as taxable income only the interest actually paid to it on obligations of the Peninsula & Occidental Steamship Co., or should it accrue all interest due upon such obligations?

The Peninsula & Occidental Steamship Co., hereinafter for convenience called the Steamship Co., is a corporation organized under the laws of Connecticut, and is engaged in the business of a common carrier by water between points in Florida and Havana, Cuba, connecting with the lines of the Atlantic Coast Line (which owns 50 percent of its capital stock) at Tampa, Florida, and with the lines of the Florida East Coast Railroad Co., (its other stockholder) at Key West, Florida. The Atlantic Coast Line and the Florida East

Coast Railroad Co. interchange freight and passenger traffic with the Steamship Co.

During the years 1928, 1929, and 1930 the Atlantic Coast Line held demand notes of the Steamship Co. in varying amounts and bearing varying rates of interest, representing advances made to it from time to time between December 1912 and August 1922. A summary of interest due and interest paid for the respective taxable years is as follows:

|  | 1928 | 1929 | 1930 |
|---|---|---|---|
| Interest due | $45,246.00 | $72,068.50 | $68,068.50 |
| Interest paid | 34,576.00 | 19,668.50 | 13,418.50 |
| Difference | 10,670.00 | 52,400.00 | 54,650.00 |

No interest was ever paid on the first 10 notes, aggregating $373,000 in principal, nor on a note for $750,000 given in exchange for an acknowledgment of indebtedness in like amount received by the Atlantic Coast Line in 1901 evidencing advances made.

As of December 31, 1931, advances made by said companies and unpaid aggregated $5,315,793.89. In 1932 the Steamship Co. delivered to its stockholder companies $5,250,000 of its first mortgage 6 percent bonds dated January 1, 1932, and maturing January 1, 1962, in payment of a like amount of principal only of said advances, including the principal only of the notes, which were marked "Paid in full." Said bonds provided that interest thereon shall not begin to run until January 1, 1942.

For the period from 1915 to 1930, both inclusive, the Steamship Co. had a net deficit of $386,876.40 after deducting interest and depreciation, and for the same period a net income of $3,306,424.12 before deducting interest and depreciation.

During the period here involved, the Atlantic Coast Line entered on its books and reported as taxable income only so much of the interest due on said notes as was actually paid during each year. Respondent made no adjustment for the year 1928 with respect to the interest as reported, but increased petitioner's taxable income for the year 1929 in the amount of $37,500, being interest due on note for $750,000 dated January 1, 1929, which was given for the acknowledgment of indebtedness executed in 1901 evidencing advances made by the petitioner. Respondent increased taxable income for the year 1930 in the amount of $54,650 representing interest due on all the notes, less the amount of interest paid and reported as income, as shown hereinabove. Respondent affirmatively alleges that for the year 1928 taxable income should be increased by the amount of $10,670 representing interest due on all the notes less interest paid

and reported, and that for the year 1929 taxable income should be increased by the amount of $52,400, representing interest due on all the notes, less interest paid and reported, instead of the amount of $37,500 as determined in the notice of deficiency.

Decision of the issue in controversy here must rest upon the determination of a question of fact. If the facts indicate that there was a reasonable expectancy of receipt of the interest involved or that the petitioner would probably be able to collect such interest, then the full amount should have been accrued on its books and reported as taxable income, notwithstanding the obligation afterwards became uncollectible or worthless, and even though this occurred within the same taxable year. On the other hand, if the facts show that there was a reasonable doubt as to the ability of the Steamship Co. to pay the interest, or if it was reasonably certain for any reason that the interest would never be received, petitioner was justified in reporting only such amounts as were actually paid by the Steamship Co. and received by it in each year.

The rule is clearly and succinctly stated by the Circuit Court of Appeals for the Second Circuit in *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34, as follows:

When tax is lawfully imposed on income not actually received, it is upon the basis of a reasonable expectancy of its receipt, but a taxpayer should not be required to pay a tax when it is reasonably certain that such alleged accrued income will not be received and when, in point of fact, it never was received. A taxpayer, even though keeping his books upon an accrual basis, should not be required to pay a tax on an accrued income unless it is good and collectible, and, where it is of doubtful collectibility or it is reasonably certain it will not be collected, it would be an injustice to the taxpayer to insist upon taxation. *Edwards* v. *Keith* (C. C. A.) 231 F. 110; *United States* v. *Frost*, 25 Fed. Cas. 1221, No. 15172; *Spencer* v. *Lowe* (C. C. A.), 198 F. 961.

A taxpayer can not be charged to have realized an income unless there exists reason for believing that the income is likely to be paid or can be collected. Such has been the ruling of the Board of Tax Appeals. *Turner's Falls Power & Electric Co.* v. *Commissioner of Internal Revenue*, 15 B. T. A. 983; *Great Northern Ry. Co.* v. *Commissioner of Internal Revenue*, 8 B. T. A. 225.

See also *Northwestern Improvement Co.*, 14 B. T. A. 79, and *Higgins Estate*, 30 B. T. A. 814.

The facts before us in the instant proceedings show that no interest was ever paid by the Steamship Co. on the note of January 1, 1929, given for the acknowledgment of indebtedness of 1901, nor on the ten notes given between 1912 and 1915. The only interest paid by the Steamship Co. to the petitioner (which was reported by it as income) was on the notes given during the period 1920 to 1922. The interest which respondent seeks to include in income not only has never in fact been received by the petitioner, but it is now apparent that it will never be received by it since petitioner relinquished all claim thereto in 1932.

It is further shown that during the 16-year period from 1915 to 1930, both inclusive, the Steamship Co. had a net deficit of $386,-876.40, after deducting interest and depreciation. For the taxable year 1928 this company had a net income of $296,373.77 and for 1929 and 1930 net deficits of $119,558.62 and $198,022.16, respectively. Thus, the result of its operations, for the taxable years was a net deficit of $21,207.01.

The balance sheets of the Steamship Co., after eliminating from the asset side the item "Intangible assets $1,500,000" and from the liability side the item "Capital stock $1,500,000", show that for each of the years 1922 to 1930, both inclusive, its total liabilities exceed its total assets by more than $1,000,000. For the taxable years 1928, 1929, and 1930 liabilities exceeded assets in the respective amounts of $1,323,275.43, $1,442,834.05, and $1,640,856.21.

In the light of its past experience and considering the financial condition of the Steamship Co. during the taxable years and for a long period prior thereto, we think that the petitioner was justified in concluding that there was no reasonable expectancy of receiving the interest which respondent now seeks to include in its taxable income. Certainly the known facts do not indicate that the obligation was good and collectible, but, on the other hand, it was a reasonable assumption that the interest in controversy could not be collected, and in point of fact it never was.

In this connection, we have carefully considered the opinion of the Supreme Court in *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. The questions in that case were (1) whether a debt ascertained to be partially worthless in 1920 was deductible in that year either as a bad debt or a loss, and (2) whether the debt was returnable as taxable income in that year to the extent that it was then ascertained to be worthless, the taxpayer contending that, since the account accrued and the debt became worthless in the same taxable year, the amount should not be accrued or included in gross income. On the latter point, the Court said:

Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. When a merchandising concern makes sales, its inventory is reduced and a claim for the purchase price arises (quoting Article 35 of Regulations 45, Revenue Act of 1918).

On an accrual basis, the "total sales," to which the regulation refers, are manifestly the accounts receivable arising from the sales, and these accounts receivable, less the cost of the goods sold, figure in the statement of gross income. If such accounts receivable become uncollectible, in whole or in part, the question is one of the deduction which may be taken according to the applicable statute. * * * That is the question here. It is not altered by

the fact that the claim of loss relates to an item of gross income which had accrued in the same year.

The meaning of the language used by the Court in the quoted opinion must be sought in the light of the facts of that case. At the time that the taxpayer's " right to receive " arose, it is not shown that the debtor was insolvent or that the debt was not good and collectible. The fact that the obligation later became worthless in part, even though within the same taxable year is, therefore, immaterial; as stated by the Court, the question then became one of the deduction which might be taken according to the applicable statute. But where the obligation is worthless at the time the " right to receive " arises, as in the instant case, the right to receive is without substance and there is in fact nothing to accrue. Accrual of a worthless item in such circumstances obviously would result in distortion of gross income, and in our opinion the Court did not intend its reasoning to be so applied as to reach the same result on a materially different state of facts.

In *Automobile Insurance Co. of Hartford* v. *Commissioner*, 72 Fed. (2d) 265, the taxpayer, reporting on an accrual basis, set up in 1928 the amount of its claim allowed by the Mixed Claims Commission, United States and Germany, representing recovery of losses arising through property destruction by the German Government. Payments made in the subsequent years were, therefore, not reported in income but credited to this account. The Commissioner determined that the accrual of the claim in 1928 was erroneous, and that no income was realized except as payments of the award were made. The court held that the " right to receive " the payments became fixed in 1928; that there then existed reasonable ground to believe it would be ultimately paid, and that to the extent of 80 percent payment was to be expected within six years. To this extent it was held proper to accrue the award on the books for 1928.

The above cited case is so plainly distinguishable from the facts of the instant proceedings that extended discussion seems unnecessary. Here there was no reasonable ground to believe, at the time the " right to receive " arose, that the interest in controversy would be ultimately paid, but the reasonable expectation was the contrary.

In our opinion the present question is ruled by the principal applied in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, where the Court held that income earned in 1916 but impounded by a receiver pending the outcome of litigation and actually paid over to the taxpayer in 1917, was not taxable as income of 1916, saying:

The net profits were not taxable to the company as income of 1916. For the company was not required in 1916 to report as income an amount which it might never receive.

Respondent's action on this issue is reversed, and his claim to increased deficiencies denied.

Issue VIII. Is the petitioner, Atlantic Coast Line, entitled to deduct a contribution of $5,000 made to the Tampa, Florida, Post of the American Legion in 1929?

The facts relating to this issue were stipulated by the parties as follows:

The Tampa, Florida, Post of the American Legion is a large and influential organization whose membership includes, inter alia, prominent business men and employees of Coast Line in and about Tampa, Florida, a city located on the lines of Coast Line. The city gratuitously leased to the Post a piece of ground for a period of thirty years and to secure funds for the erection of a home for the Post contributions were solicited. The Board of directors of Coast Line considered the matter of a contribution and upon recommendation of its executive vice-president, contributed $5,000 to the fund. The contribution was enthusiastically received and members of the Post expressed the belief that it would result in new friends and more business for Coast Line.

While deductions for charitable and other contributions are authorized in the case of an individual, within certain limitations (section 23 (n), Revenue Act of 1928) it is the settled policy of Congress to deny such deductions to corporations, and an expenditure of this character made by a corporation is deductible in computing net income only if it comes within the classification of " ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." (Sec. 23 (a), Revenue Act of 1928). And in order to constitute a deductible business expense, the expenditure must produce direct benefit to the corporation or bear some reasonable relation to the conduct of its business. *Poinsett Mills*, 1 B. T. A. 6; *Anniston City Land Co.*, 2 B. T. A. 526; *Elm City Cotton Mills*, 5 B. T. A. 309; *Indiana Harbor Belt Railroad Co.*, 16 B. T. A. 279; *Killian Co.*, 20 B. T. A. 80. In order that expenditures may be deductible as expense, they must be both " ordinary and necessary." It is not enough for the taxpayer to regard them as expedient or as an aid to building up good will. *Welch* v. *Helvering*, 290 U. S. 111, affirming 63 Fed. (2d) 976, which affirmed 25 B. T. A. 117.

In many instances it may not be doubted that it is good business judgment for a corporation to make contributions or donations to local charities, and it is often true that some benefit, direct or indirect, may result therefrom, but such a showing alone is not sufficient to allow deductions of the amounts as " ordinary and necessary " business expenses.

The stipulated facts in this case do not show that any direct benefit flowed to the petitioner from its contribution to the American Legion Post, nor do the facts indicate that the contribution bore such reasonable relation to the conduct of the petitioner's business as to

justify its deduction as an ordinary and necessary business expense. *Eitingon-Schild Co.*, 21 B. T. A. 1163, 1176; *Adam, Meldrum & Anderson Co.*, 29 B. T. A. 419. Respondent's action in denying the deduction is approved.

Issue IX. Is the petitioner, Atlantic Coast Line, entitled to deduct as an expense in 1928 the sum of $49,320.48, representing expenditures which petitioner capitalized in 1930 under instructions from the Interstate Commerce Commission?

The parties stipulated the following facts:

During the year 1928 Coast Line expended the sum of $49,320.48 in connection with its roadway and properties. A summary of these expenditures is as follows:

| Nature of Expenditures | Number of Items | Total Amount |
|---|---|---|
| Shade Trees | 207 | $2,070.00 |
| Landscape gardening | 166 | 12,017.51 |
| Retired box cars used as shanties | 50 | 2,487.50 |
| Office machines | 9 | 797.08 |
| Highway crossing signs (Florida) | 1,138 | 25,116.10 |
| Riprap for slope protection | (locations) 85 | 6,842.29 |
| Totals | 1,655 | 49,320.48 |

Coast Line charged these expenditures to operating expenses on its books and claimed the same as a deduction in computing its taxable income reported for the year 1928. Respondent allowed this deduction as claimed. In 1930 pursuant to instructions from the Interstate Commerce Commission, Coast Line capitalized the sum of $286,833.85 which sum included the $49,320.48 expended in 1928 as well as the amount of $237,513.37 expended for similar items in years prior to 1928 which Coast Line had charged to operating expenses. Respondent now contends that the amount of $49,320.48 is not deductible in determining Coast Line's taxable income for 1928.

Respondent states in his brief that the Atlantic Coast Line has not set up depreciation accounting for its roadway property, but accounts for such property when it is retired and at such time claims a deduction in its income tax returns for such loss. The correctness of this statement is admitted by petitioner in its reply brief, but petitioner further says that its practice is to deduct as an expense the cost of upkeep of its roadway property, which, for all practical purposes, operates to offset any depreciation thereon that annually occurs. Petitioner contends, therefore, that the deduction taken in 1928 for the items above set out should not be disturbed, notwithstanding the amounts have since been capitalized.

The nature of the items in controversy under this issue renders the position of the petitioner untenable. Such expenditures clearly resulted in the acquisition of capital assets, and the amounts were properly capitalized in the later year. They do not represent upkeep,

as suggested by petitioner. They represent additions and betterments which increased petitioner's capital investment. Whether petitioner should secure a return of its invested capital free from tax by means of annual deductions for depreciation or by the retirement accounting method is a question we are not called upon here to decide. The point before us is whether the amounts are allowable as expense deductions from gross income for 1928, and this question must be answered in the negative. On this issue, respondent is sustained.

In the stipulation of facts, the parties agreed " that the lessee is entitled to deduct as additional rental the federal income taxes of the lessor and that any adjustments to be made to the taxable income of Coast Line or of Carolina Company will be determined by the parties under Rule 50." This stipulation will be given effect in the redetermination of the deficiencies.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*