PITCHFORD'S, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pitchford's, Inc. v. Commissioner
Docket No. 1037-72
United States Tax Court
T.C. Memo 1975-75; 1975 Tax Ct. Memo LEXIS 292; 34 T.C.M. (CCH) 384; T.C.M. (RIA) 750075; March 26, 1975, Filed Garthe Brown,Brian Steenson, for the petitioner. Gary DeFrang, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Year Ended
Deficiency
November 30, 1967
$11,665.99
November 30, 1968
$14,992.14
In view of concessions, the only issue remaining is whether respondent was authorized by section 482[1] to allocate constructive interest income to petitioner on interest-free loans petitioner made to Gappco Trucking Company, a corporation controlled by the same interests that controlled petitioner. FINDINGS OF FACT Some of the facts *293 have been stipulated and are so found. Petitioner, Pitchford's, Inc., an Oregon corporation, had its principal office in Eugene, Oregon, when it filed its petition herein. Since its incorporation in 1948, and throughout the years at issue, it was in the business of selling trucks in Eugene and Medford, Oregon; New Mexico; northern California and Arizona. Petitioner uses a fiscal year ending November 30th and the accrual method of accounting. It filed its tax returns for the years ended November 30, 1967 and 1968 with the district director of internal revenue in Portland, Oregon. G. P. Pitchford and members of his family own half of petitioner's stock, and Will Gonyea holds the other half as trustee. [2] G. P. Pitchford is president and general manager of petitioner. Gappco Trucking Company ("Gappco") was incorporated in Oregon in 1955 and liquidated in 1972. [3] It maintained its principal office in Eugene, Oregon. It used a fiscal year ending June 30th and the accrual method of accounting. All Gappco's stock was owned by G. P. Pitchford, who was its president and general manager. Will Gonyea had an option to *294 acquire one-half of Gappco's stock. As a result, petitioner and Gappco were controlled by the same interests. Gappco operated a log hauling business in the southern part of Oregon until June 30, 1965. It was also a used truck dealer both before and after terminating its log hauling operations. Petitioner disposed of used trucks it acquired as trade-ins and repossessions by selling them to Gappco. Gappco used some of the trucks acquired from petitioner in its log hauling operation and sold the rest. Gappco also demonstrated new trucks for petitioner. Gappco possessed an Oregon Public Utilities Commission permit which authorized it to haul logs and also to demonstrate logging trucks, something that petitioner was not entitled to do under its dealer's permit. When petitioner accepted a used truck in trade on a new truck, it sold that trade-in to Gappco at its wholesale value without regard to the allowance assigned to the truck for trade-in purposes. Gappco almost always made a profit on the resale of *295 these trade-in trucks. When petitioner had to repossess a truck it had sold, it paid off the purchaser's balance owing to the financial institution, and then sold the truck to Gappco at the price it had paid to repossess it. The cost of repossessing each truck exceeded its fair market value in such an amount that Gappco consistently took a small loss on the resale of repossessed trucks. [4]
When G. P. Pitchford originally acquired the stock of Gappco, petitioner held two Gappco promissory notes with an unpaid balance, as of June 1964, of $3,532.99. In addition, Gappco had purchased trucks, parts and repair services from petitioner on open account. The open account purchases were repaid within six months without interest. From 1961 to 1963, petitioner advanced $39,000 to Gappco, evidenced by five demand, non-interest bearing promissory notes. Gappco used this money to pay its current expenses in the years the money was received. Gappco had begun *296 its log hauling operations in 1962 with a purchase of seventeen log trucks and trailers from petitioner. Gappco executed a retail installment contract for the trucks in the amount of $325,000 ($272,000, plus $53,000 finance charge). By June 1964 Gappco had sold some of the trucks and had applied the proceeds to reduce the outstanding balance to $247,200. The remaining trucks and trailers were sold by April 1965 for $153,745, and the proceeds applied to the open account with petitioner and to Gappco's current expenses. On April 30, 1964, Gappco issued a new demand, non-interest bearing promissory note payable to petitioner for $289,732.99 as a substitute for all of the remaining earlier indebtedness. On June 30, 1964, Gappco purchased three contracts receivable from petitioner for $64,871.28, issuing a demand, non-interest bearing promissory note in payment. On May 10, 1965, petitioner advanced $100,000 to Gappco, which issued a demand, non-interest bearing promissory note for the amount. On May 12, 1965, Gappco paid petitioner $112,577.11 on its open account, reducing the balance to $420.66. As of October 1, 1966, petitioner held demand, noninterest bearing promissory notes from *297 Gappco as follows: Date of Note
Amount
April 30, 1964
$289,732.99
June 30, 1964
64,871.28
May 10, 1965
100,000.00
Total
$454,604.27 No part of this indebtedness was paid as of November 1968. Gappco did not accrue interest expenses and petitioner did not accrue interest income on these notes during this period. From 1964 to 1968 Gappco also borrowed funds from independent third parties. These short term loans bore interest rates of not less than six nor more than seven percent. Gappco's indebtedness to petitioner on the outstanding promissory notes was subordinated to these short term obligations, and these advances by third parties were guaranteed by petitioner and by Gappco's shareholders. In Gappco's years ended June 30, 1967, 1968 and 1969, its book liabilities exceeded the sum of its book assets and shareholder capital investment. The balance sheets were not an unfair or inaccurate reflection of Gappco's financial condition. Assets were reported at cost, except for inventory which was reported at lower of cost or market. However, both land and inventory were probably overvalued. Gappco generated gross profits and taxable income during the years at *298 issue and fiscal 1969 as follows: Taxable Income
before net oper- Year Ended
Gross Profits
ating loss deduction
June 30, 1967
$ 68,360.83
[19,579.13)
June 30, 1968
87,307.48
22,547.06
June 30, 1969
110,268.39
721.66 Had Gappco agreed to pay interest on the outstanding promissory notes, petitioner would not have had a reasonable expectancy of collecting such interest. On November 30, 1972, Gappco transferred all of its remaining assets, after payment of its other liabilities, to petitioner in payment of its promissory notes. Petitioner sustained a loss of about $150,000. OPINION Petitioner loaned money to Gappco on non-interest bearing notes. Gappco and petitioner were concededly owned or controlled by the same interests, and under section 482, respondent has allocated "interest income" to petitioner from Gappco. Petitioner claims that Gappco's financial position was so insecure that had an arm's-length accrual basis taxpayer made the loans in question on an expressly interest-bearing basis, lack of a reasonable expectancy of collectibility of such interest would have precluded accrual. Petitioner then contends that allocation of constructive *299 interest income under section 482 is unauthorized where accrual of interest income would have been so precluded. Respondent concedes that he cannot allocate interest income to petitioner under section 482 if Gappco's financial condition is indeed proven to be so shaky that accrual of such interest income would have been precluded had the loans in fact provided for the payment of interest. Respondent recognizes the authority of cases such as Chicago & North Western Railway Co.,29 T.C. 989 (1958), holding that in the absence of a reasonable expectancy of collection, an accrual-basis taxpayer need not report otherwise accrued interest income. However, respondent contends that petitioner has failed to prove the factual premise of his argument, i.e., that Gappco's financial condition precluded a reasonable expectancy of collection. We express no views on the question whether allocation of interest income under section 482 is indeed precluded where there would not have been a reasonable expectancy of collection of such interest. For purposes of this case only, we accept respondent's *300 concession on this point. We therefore proceed to the factual question. Since we decide this question in favor of petitioner, we need not consider the further issue raised by petitioner of whether Gappco must realize gross income from the use of the loaned funds before a section 482 allocation is authorized. See, e.g.Kerry Investment Co.,58 T.C. 479 (1972), affirmed in part and reversed in part 500 F. 2d 108 (C.A. 9, 1974). The determination of whether petitioner would have had a reasonable expectancy of receiving interest payments from Gappco, had the promissory notes provided for interest, is a question of fact that must be determined from all the circumstances in the case. Chicago & North Western Railway Co.,29 T.C. at 996; Atlantic Coast Line Railroad Co.,31 B.T.A. 730, 749, affirmed on other points 81 F. 2d 309 (C.A. 4, 1936), certiorari denied 298 U.S. 656 (1936). After carefully considering all the evidence, we conclude that petitioner has sustained its burden of establishing that there was not a reasonable expectancy that Gappco could have paid interest to petitioner *301 during the fiscal years in issue. Gappco's balance sheets accrately reflected its financial condition during the period in issue. Only two assets on the balance sheet could have been worth more than book value, inventory and land, and both were shown to be worth either the amount reflected on the balance sheets or less. Compare Greer-Robbins Co. v. Commissioner,119 F. 2d 92 (C.A. 9, 1941), affirming a Memorandum Opinion of this Court. Gappco's weak financial position, and its potential inability to meet its obligations, are reflected in the fact that its liabilities continued to exceed its assets during the fiscal years of petitioner which are in issue. See Chicago & North Western Railway Co.,supra, and Atlantic Coast Railway Co.,supra. At no time during the period in issue (or subsequent thereto) did Gappco have sufficient assets to pay all its debts in full, let alone the $22,730.21 of interest which respondent allocated to petitioner for each of the years in issue. Gappco had no ability as a going concern to generate income which would indicate economic soundness, and thereby demonstrate with reasonable certainty that interest *302 could have been paid petitioner. It produced only $22,547.06 and $721.66 of taxable income (before net operating loss deduction) in its fiscal years ended June 30, 1968 and 1969, and had a $19,579.13 loss in taxable income in its year ended June 30, 1967. Financial institutions which made short term loans to Gappco were secured by Gappco's net worth unreduced by its loans to petitioner, because those loans were subordinated to the financial institutions' loans and guaranteed by Gappco's shareholders and petitioner. Concededly Gappco could have paid interest to petitioner on its loans if it did not pay the principal owed petitioner. However, the general rule, which also appears to be the rule in Oregon, is that payment is first applied to extinguish items which are earliest in time. See Fowler v. Courtemanche,202 Or. 413, 274 P. 2d 258 (1954). Therefore, interest accrued on the petitioner's loans as of November 30, 1967 and 1968 would be the last item to which any payment would be applied. The third party creditors would have been paid prior to petitioner because petitioner's *303 loans were subordinated to third party loans and because of the guarantees of petitioner and Gappco's shareholders, and any remaining payments would have been applied to the debt owing to petitioner since it was older in time than interest for the years in issue. Whether there is a reasonable expectancy of payment when the right to receive income arises must be determined from facts known in the years in issue, and events in later years are not determinative of the propriety of accruing income in earlier years. Automobile Ins. Co. v. Commissioner,72 F. 2d 265 (C.A. 2, 1934), reversing a Memorandum Opinion of this Court. However, we may test our conclusion by looking at subsequent events (Chicago & North Western Railway Co.,supra at 997), and in so doing we note that Gappco's financial condition continued to deteriorate until it was liquidated in 1972, at which time petitioner sustained a loss on its indebtedness of about $150,000. Respondent finally argued that even if petitioner, as an accrual basis taxpayer, would ordinarily not be required to report interest *304 income from the loans in question because there was no reasonable prospect of collecting such interest, petitioner still must report the imputed income because it caused Gappco's poor financial condition by selling repossessed trucks to Gappco at above market value. However, respondent and petitioner now agree that any losses caused Gappco as a result of sales of repossessed trucks to it by petitioner were negligible. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. The record does not reflect the beneficial owners of the trust.↩
3. Gappco changed its name from Lind Trucking Company to Gappco Trucking Company in 1961. For simplicity, the company will be referred to as Gappco both before and after 1961.↩
4. When asked by the Court to determine the amount of the loss, the parties upon inspection of the books found the amount of the loss to be negligible and asked to be released of the time-consuming duty of determining the exact amount.↩